Shaw *v.* Dwight.

[NEW-YORK GENERAL TERM, December 5, 1853. *Edmonds, Mitchell, Edwards* and *Roosevelt,* Justices.]

———————•-•-•———————

SHAW *vs.* DWIGHT and ST. JOHN.

Where the holder of senior judgments, which have been paid and satisfied, fraudulently keeps the same on foot, to the prejudice of a junior judgment creditor, and is proceeding to collect the same by execution, and threatens to sell the debtor's real estate, the junior creditor has a right to have the cloud upon the title removed, and to an injunction to stay the proceedings upon the executions.

THIS was an appeal by the defendant Dwight, from an order made at a special term, denying a motion to dissolve an injunction and to vacate a stay of proceedings.

*Wm. Curtis Noyes*, for the appellant.

*B. C. Thayer*, for the plaintiff.

*By the Court,* ROOSEVELT, J.  The object of this appeal is to obtain the dissolution of an injunction, which was issued at the instance of the plaintiff, staying all proceedings on two judgments confessed by the defendant St. John, in favor of his co-defendant Dwight, for $7005 and $8000, respectively.  The plaintiff alleges that he is the holder of a junior judgment against St. John, and that the two senior judgments, although actually paid, are fraudulently kept on foot to his prejudice, and that Dwight is proceeding to collect the same, by execution.  On the other hand, it is contended that, if the fact be so, a sale under them would be void, and therefore could not injure Shaw.  Suppose, however, Shaw should attempt to collect his judgment by

Shaw v. Dwight.

a sale under execution, would any purchaser be likely to bid as much for the property with two seemingly unsatisfied prior judgments upon it, amounting to more than $15,000, as if the record title in that particular were free and clear? and especially if the judgments were not only unsatisfied of record, but, as in this case, were actually being enforced by execution?

It is not denied that the notes, to secure which the Dwight judgments were given, have been paid; and yet Dwight has not only issued executions upon the judgments, but threatens to sell the very property to which Shaw looks for the satisfaction of his lien. Is this no injury to Shaw? Or is it no injury for which the law affords redress? Upon the admitted facts of the case it is obvious that the Dwight judgments ought not only not to be set up, but to be canceled of record; and upon the final hearing, should there be no change in the aspect of the case, that must be the decree. They are, while outstanding, a cloud upon the title, and Shaw has both an interest and a right to have that cloud removed. And shall Dwight in the meanwhile, before a final hearing can be had, be permitted to go on and make that cloud both denser and broader? Even before the code, such a proceeding would not have been allowed, as appears by the decision of Chancellor Walworth in *Burns* v. *Morse*, (6 *Paige*, 108;) and the code is certainly not less remedial, in this respect, than the former chancery practice. (*See* § 219.) It provides—and the provision it seems to me meets this case precisely—that "where it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce injury to the plaintiff, &c. a temporary injunction may be granted to restrain such act."

Before the code the general rule was that the injury, the commission of which alone could be restrained by preliminary injunction, must be of an "irreparable" character; and in the exercise of a sound discretion the use of the remedy should in general be still confined to such cases. But it cannot be denied that the language of the code was intended to put an end to the nice

discussions which so frequently arose under the old system, as to the true meaning of the term " irreparable," in its application to each particular case. Hence the use of the word " injury" alone, unaccompanied by its debateable and much debated adjective; thus leaving to the court or officer a more liberal discretion in determining whether, under all the circumstances, the application should be granted or not, and taking away the temptation unduly to appeal from the decision.

It appears to me that Mr. Justice Morris was clearly right in granting this injunction, and Mr. Justice Edmonds equally right in refusing to vacate it; and that the order appealed from ought therefore to be affirmed with costs.

[NEW-YORK GENERAL TERM, December 5, 1853. *Edmonds, Mitchell, Edwards* and *Roosevelt,* Justices.]