ELIZABETH SHARPE *et al.*

*vs.*

HENRY L. TATNALL, Trading as HENRY L. TATNALL & Co..

New Castle, Feb. T. 1880.

*Judicial sale under mortgage; purchaser not affected by usury; discharges lien of judgment under Mechanics' Lien Law; prevention of cloud on title.*

1. The title of an innocent purchaser of land at a judicial sale under a mortgage is not affected by the usurious character of the mortgage.

2. Prior to the passage of any statute upon the subject, it was the settled law of this State that a sheriff's sale under a junior judgment discharged the lands sold from the liens of all prior judgments and recognizances, whether due or not due.

3. The sale of land upon execution under a mortgage discharges the land from the lien of a judgment recovered against the defendant under the Mechanics' Lien Law, even where the lien of such judgment is prior to the lien of such mortgage.

4. The prevention of a cloud upon title is a salutary branch of equity jurisdiction; and equity will restrain a sale of land on execution when such sale would create a cloud upon the title, although in fact no title would pass thereby.

BILL TO RESTRAIN PROCEEDINGS UPON A JUDGMENT UNDER THE MECHANICS' LIEN LAW. — The complainants' bill, filed February 21, 1876, sets forth, among other things, that the Agricultural Society of New Castle County, a corporation of this State, being seised in fee simple of a tract of land known as the "agricultural fair grounds," situated in Christiana

Hundred in said county, by deed dated May 19, 1871, but not delivered until June 21, 1871, conveyed said premises to the Wilmington Rifle Club, also a corporation of this State, for the consideration of $20,000. That, to secure a part of said purchase money, said rifle club on the delivery to it of said deed, on June 21, 1871, executed and delivered to said society two mortgages of said premises,—one for $12,000, recorded July 5, 1871; and the other for $6,000, recorded July 12, 1871. That said agricultural society subsequently assigned said two mortgages to Jesse Sharpe, since deceased, and that his administrator afterwards recovered against the said rifle club a judgment in the superior court on the said mortgage of $12,000. That under a writ of *levari facias* to the November Term, 1874, issued on said judgment, the sheriff sold and conveyed said premises to the complainants for $16,000, and that said sheriff applied to said writ of *levari facias* so much of the proceeds of said sale as was sufficient to satisfy the same, and retains in his hands the balance thereof,—$2,700. That while said agricultural society was seised of said premises,—to wit, on May 12, 1871,—an agreement in writing was made by said society and said rifle club for the sale and conveyance to the latter of said premises, and that said club should have immediate possession. That upon the execution of said agreement said rifle club paid part of. the purchase money, and took possession of said premises under said agreement. That while said rifle club was in possession under said agreement, as well as afterwards while in possession under said deed, H. L. Tatnall, the defendant, sold and furnished to said rifle club materials for the erection of certain buildings on said premises, and that he afterwards, on December 1, 1871, filed his claim in the superior court, and has issued thereon a writ of *scire facias* against the said rifle club for the purpose of obtaining a lien on said buildings and the ground on which the same were erected, and that judgment was rendered thereon against the said rifle club at the May Term, 1874, for $2,057.45. That the defendant has caused to be issued on his said judgment a writ of *levari*

*facias* to the May Term, 1876, under which the said premises are about to be sold. That until after said conveyance to said rifle club, it had no right to suffer or create any lien on said premises, and that the liens of said mortgages for purchase money are paramount to any lien created or suffered by said rifle club, and that said sheriff's sale to the complainants discharged said premises from the lien of said judgment of the defendant. That the advertisement and sale of said premises under said judgment of said defendant would cast a cloud upon the title of the complainants, for which there is no adequate remedy at law.

The complainants pray that an injunction may be issued, restraining all proceedings against said premises under said judgment and execution of said defendant, and also that a preliminary injunction, to the same effect, may be issued.

A preliminary injunction was granted March 13, 1876.

The answer of the defendant, filed December 6, 1876, claims that the lien of his said judgment under the Mechanics' Lien Law relates back to May 23, 1871, when the furnishing of said materials was commenced, and that said lien is paramount to the lien of said mortgages; that his lien was not affected by said sale under said mortgage of $12,000, but that said sale was subject to the lien of said judgment; that he has the right now to sell said premises under his said judgment. That said deed to the rifle club was delivered May 19, 1871, more than a month before said mortgages were executed; that neither of said mortgages was made for securing part of the purchase money of said premises; that there was no legal or valid consideration for the assignment of said mortgages to said Sharpe. That the furnishing of said materials by the defendant did not commence while the rifle club was in possession under said agreement, but under said deed; that his said judgment has priority, whether the rifle club was then in possession under said agreement or deed. That the rifle club took title to the premises subject to certain liens and floating claims against the agricultural society, amounting to about $12,000. That after the delivery of the deed, on June

21, 1871, an arrangement was made between the agricultural society and the rifle club, by which the latter should and did execute said two mortgages to the former, but without any agreement that they should be drawn as purchase-money mortgages; that said mortgages were not made or intended as purchase-money mortgages, but for the purpose of sale to raise money by way of loan thereon to pay off said liens and floating claims against the agricultural society. That on said June 21, 1871, it was also arranged and agreed between the agricultural society and the rifle club that the former would find a person to loan money on said mortgages, if the latter would pay the expenses of negotiating said loan, not exceeding $500; that there was no consideration for said mortgage of $12,000 between said society and club when the same was executed and negotiated; that pursuant to said agreement, and with knowledge thereof, the said Sharpe discounted said mortgage of $12,000, and made a loan of money thereon on July 3, 1871, and on the same day he received from the rifle club the sum of $500 as a bonus therefor, and from the agricultural society a further bonus of $500; and that by reason of said arrangement said mortgage of $12,000 was and is illegal and void, and was and is in its inception and transfer founded upon and made in pursuance of an usurious contract.

At the September Term, 1877, a motion to dissolve the preliminary injunction was, after argument, denied, and said injunction continued until the further order of the chancellor.

At the February Term, 1880, the case came on for final hearing upon the pleadings and proofs, and was fully argued by the solicitors of the respective parties.

*William C. Spruance*, for the complainants:

I. Even if the judgment of the defendant was ever a valid lien against the premises, it was discharged by the sale under the mortgage of $12,000 given by the rifle club to the agricultural society. *State* v. *Vickory*, 1 Harrington, 193; *Farmers Bank* v. *Wallace*, 3 Harrington, 370; Act March 29, 1771, Rev. Code, p. 681.

The whole legal and equitable estate in these premises passed to the complainants under the sheriff's sale upon the judgment on the mortgage of $12,000 for part of the purchase money. *Zeigler's Appeal*, 69 Pa. 471.

The land was discharged from the lien of this judgment of the defendant, by the sale under the mortgage, even if said judgment is entitled to be paid out of the funds in the hands of the sheriff, in preference to said mortgage.

By said sale under the mortgage the land was discharged from the lien of the judgment of the defendant, even if the deed from the agricultural society to the rifle club was delivered on the day of its date, before the making of said mortgage.

II. The liens of the mortgages for the purchase money have preference to the judgment of the defendant.

Rev. Code, chap. 83, p. 504, § 21, provides that "If lands or tenements be sold, and a mortgage of the same, or any part thereof, made by the purchaser to the vendor for securing the purchase money, or any part thereof; and if such mortgage be recorded within 60 days after making it,— the lien of said mortgage on said lands or tenements, purchase whereof is secured by it, shall have preference to any judgment against the mortgagor, or any other lien created or suffered by him, although such judgment or lien be of a date prior to the mortgage."

III. In no aspect of the case is it material that the deed was dated, signed and acknowledged before the mortgage was dated, signed and acknowledged, if the two instruments were delivered at the same time.

1. If a deed of conveyance and a mortgage for the purchase money be delivered at the same time, it is of no consequence that they bear different dates, and were executed on different days, because they take effect only from delivery. *Mayburry* v. *Brien*, 40 U. S. 15 Pet. 21 (10 L. ed. 646); *Banning* v. *Edes*, 6 Minn. 402; *Curtis* v. *Root*, 20 Ill. 53; *Lamb* v. *Cannon*, 38 N. J. L. 362.

2. The date of the instrument is only presumptive evidence

of the time of delivery, and this may be rebutted by parol proof. *Ibid.*

3. In such a case the deed and mortgage are regarded as parts of the same transaction, and the lien of the mortgage takes precedence of prior judgments and other incumbrances against the purchaser. *Ibid.*

IV. Before the conveyance of the premises to the rifle club, June 21, 1871, it had no right to incumber the same under the Mechanics' Lien Law, so as to defeat the right of the vendor to secure the purchase money.

The proceedings by *scire facias*, provided by the Mechanics' Lien Law of March 29, 1871 (Rev. Code, p. 668), are personal, and not *in rem.*

Proceedings and judgment under our first Mechanics' Lien Law, passed March 7, 1861 (12 Del. Laws, 181), are held to be *in personam*, and not *in rem.* The lien of the judgment upon the particular property related back to the time the work, etc., began, but was in other respects a general judgment. An invariable and inseparable quality, etc., of a proceeding *in rem* is the seizure of the thing, *e. g.*, seizure under an attachment, although such writs issue against the defendants by name. *Capelle* v. *Baker*, 3 Houston, 344.

The word "owner," in statutes relating to mechanics' liens, is construed to mean the owner of the legal title, the vendor before the actual conveyance of the land, and not the vendee under a contract for conveyance. *Metcalf* v. *Hunnewell*, 1 Gray, 297; *Thaxter* v. *Williams*, 14 Pick. 49; *Hayes* v. *Fessenden*, 106 Mass. 228; *Johnson* v. *Pike*, 35 Me. 291; *Guy* v. *Carriere*, 5 Cal. 511; *Lamb* v. *Cannon*, 9 Vroom, 362; *Steinmetz* v. *Boudinot*, 3 Serg. & R. 541.

One in possession of land under a contract of sale providing for a conveyance to him cannot incumber the land by mechanics' liens for labor or materials furnished while so in possession, so as to defeat the vendor's lien for purchase money; and upon the subsequent conveyance of the land pursuant to such contract, a mortgage given for the purchase money, and duly recorded, has preference over any such lien

or claim. *Metcalf* v. *Hunnewell,* 1 Gray, 297; *Thaxter* v. *Williams,* 14 Pick. 49; *Hayes* v. *Fessenden,* 106 Mass. 228; *Johnson* v. *Pike,* 35 Me. 291; *Guy* v. *Carriere,* 5 Cal. 511; *Virgin* v. *Brubaber,* 4 Nev. 31; *Metropolis Nat. Bank* v. *Sprague,* 5 C. E. Green, 13; *Strong* v. *Van Deursen,* 8 C. E. Green, 369; *Lamb* v. *Cannon,* 9 Vroom, 362; *O'Conner* v. *Warner,* 4 Watts & S. 223; *Campbell's Appeal,* 36 Pa. 247; *Stoner* v. *Neff,* 50 Pa. 258; *Zeigler's Appeal,* 69 Pa. 471; 1 Jones, Mort. § 466; Phill. Mech. Liens, §§ 244, 245.

A contract to convey land, although in writing, does not amount to a consent in writing to erect buildings, so as to make the estate of the vendor subject to a lien for buildings erected by a tenant or other person, and the estate of the vendor is not affected by such lien. *Metropolis Nat. Bank* v. *Sprague,* and *Strong* v. *Van Deursen; supra; Jersey Company Associates* v. *Davison* 5 Dutcher, 415.

The verbal statement, by the owner of the legal title, to the person about to erect the buildings under an agreement with the holder of the contract of purchase, that he could safely go on with the buildings, is not a contract to put up buildings, and is not such consent as will bind the owner;—to have such effect it must be in writing. *Strong* v. *Van Deursen, supra.*

In such case it is of no consequence that the vendor had notice of the intention of the vendee to build, and knew of the progress of the work, and made no objection. *Hayes* v. *Fessenden,* 106 Mass. 228.

The payment by the purchaser of part of the purchase money, at the time of the execution of the contract of sale, does not authorize him to incumber the land by mechanics' liens for labor and materials furnished before the delivery to him of the deed of conveyance. *Lamb* v. *Cannon,* 9 Vroom, 362.

A lien law, so far as it operates to charge the lands of a party with a debt not contracted by him or for his benefit, should be construed strictly. *Jersey Company Associates* v. *Davison, supra.*

V. The Pennsylvania decisions can only be understood by reference to the Acts of that State, authorizing mechanics' liens. The parts of said Acts material to this examination are as follows:

The Act of April 1, 1803, subjected the building to the payment of debts contracted by the owner thereof, for work and materials furnished for such building, before any other lien which originated subsequent to the commencement of said building. See Serg. Mech. Lien, 317.

The Act of March 17, 1806, subjected the building to the payment of debts contracted for work and materials furnished for such building, before any other lien which originated subsequent to the commencement of said building. This Act repealed the Act of 1803, and gave a lien not merely for "debts contracted by the owner," as did the Act of 1803, but for "debts contracted for or by reason of any work done or materials found," etc., without regard to the person by whom such debts were contracted. Id. 318.

The Act of March 28, 1808, extended the operation of the Act of 1806 to other parts of the State beside Philadelphia, and also gave to the person who had filed his claim his election to proceed by personal action against the debtor or by *scire facias* against the debtor and owner of the building, provided that no judgment on *scire facias* should warrant execution, except against the building. Id. 319.

The Act of June 16, 1836, extended over the whole State the operation of the Act of 1806; and the supplements thereto made the lien extend to the ground covered by the building, etc., as well as to the building; declared that the lien for work and materials should be preferred to every other lien which attached upon the building or ground subsequent to the commencement of the building; required that the claim filed should set forth the names of the claimant and of the owner or reputed owner of the building, also of the contractor, architect, or builder, when the contract of the claimant was made with such contractor, architect, or builder; and directed that the proceedings to recover the amount of the claim should

be by *scire facias,* but reserved to the person to whom such debt is due the right to maintain a personal action against the owner of the building or other person liable therefor. Id. 330.

The Act of April 28, 1840, provided that the lien created by the Act of 1836 should not be construed to extend to any other or greater estate in the ground on which the building is erected than that of the person in possession at the time of commencing said building, and at whose instance the same is erected; and that no other or greater estate than the above should be sold under said Act. Id. 344.

The Act of April 16, 1845, declared that the Act of 1836 should extend to claims for labor and materials in erecting a building which may be erected under a contract for the erection of the same; and that such claims should be as valid as if the building was not erected by contract. See Id. 348.

VI. The following cases will show the construction given to these Acts by the courts of Pennsylvania:

*Steinmetz* v. *Boudinot,* 3 Serg. & R. 541, under the Act of 1803, held that in order to create a lien the debt must be contracted with the owner; and that one to whom the owner had contracted to convey could not subject the same to liens for materials, etc.

*American F. Ins. Co.* v. *Pringle,* 2 Serg. & R. 138, was under the Act of 1806. An unfinished house was sold, and a mortgage taken for the purchase money. The vendor commenced the house, and the vendee completed it after he took title and made said mortgage. *Held,* that persons furnishing labor and materials after the recording of the mortgage should be preferred to the mortgage. All the materials were furnished to the owner for the time being. The case is expressly decided upon the words of the Act which make such claims liens in preference to any other lien "which originated subsequent to the commencement of the house or other building."

*Savoy* v. *Jones,* 2 Rawle, 343, under the Act of 1806, held that the contract need not be with the owner, but that under this Act the character of the title of the person to whom the materials were furnished, whether for life or in fee, was not important.

*Anshutz* v. *McClelland*, 5 Watts, 487, under the Acts of 1806 and 1808, held that *scire facias* upon mechanics' lien is a proceeding *in rem*.

*Bickel* v. *James*, 7 Watts, 9, under the Acts of 1806 and 1808, held that an equitable vendee of land, by building on it, subjects it to mechanics' liens; that under these Acts everything about ownership was suppressed, and the building becomes the debtor. The proceeding by *scire facias* is strictly a proceeding *in rem*.

*Holdship* v. *Abercrombie*, 9 Watts, 52, under Acts of 1806 and 1808, held that under the Act of 1803 the owner only could subject the building, etc., to a lien; but under the Acts of 1806 and 1808 a tenant for years of the land could subject it to lien for materials, etc.

*O'Conner* v. *Warner*, 4 Watts & S. 223, under Act of 1840, held that sheriff's sale upon a lien under this Act confers no other or greater title in the premises than was vested in the person in possession at the time the building was erected; and when he had but an equitable title such liens will be postponed to the vendor's claim for the purchase money.

*McClelland* v. *Herron*, 4 Pa. 63, was under the Acts of 1806 and 1808. A tenant for years erected a building against which and the land a mechanics' lien was filed and *scire facias* issued, in which the tenant was described as owner or reputed owner. *Held*, that under sale on this lien no more passed than the interest of the tenant in the land, and the title of the owner of the fee was not affected.

*Lyon* v. *McGuffey*, 4 Pa. 126, was under the Acts of 1836 and 1840. One in possession under an agreement for purchase erected buildings, and subsequently the land was conveyed to him, and, 17 days after this, judgment entered on note for purchase money. *Held*, that the mechanics' lien had preference to this judgment, but that it would have been otherwise if the judgment had been entered at the same time the deed was delivered.

*Gaule* v. *Bilyeau*, 25 Pa. 522, was under the Acts of 1836 and 1840. A tenant in possession under a lease providing for

conveyance erected buildings,— held that a mechanics' lien for the same was valid. No question in this case as to the vendor's right to secure purchase money.

*Campbell's Appeal*, 36 Pa. 247, was under the Acts of 1836 and 1840. One in possession under agreement for conveyance erected buildings; afterwards a deed was made, and at same time a mortgage given to a third party, who advanced the purchase money; this mortgage was not recorded until after 60 days. *Held*, that the mortgage had priority over the mechanics' lien; that the materials were furnished on the credit of the equitable estate of the purchaser; that they were bound to stand aside in favor of the vendor's claim for the purchase money, and that they survive or perish with the equitable estate.

*Stoner* v. *Neff*, 50 Pa. 258, was under the Acts of 1836 and 1840. The vendee of land under agreement commenced the building and afterwards received the deed, at the same time giving judgment for purchase money. *Held*, that if the vendor, at the time of parting with his title, takes a mortgage or a judgment to secure purchase money, his lien on the estate cannot be displaced by any other incumbrance, provided the mortgage be recorded within 60 days, or the judgment be entered on the same day. The mechanics' lien does not take precedence of the vendor's claim.

*Zeigler's Appeal*, 69 Pa. 471, was under the Acts of 1836 and 1840. T bought by articles land of G, paid part of purchase money, went into possession, and built. G recovered judgment for the unpaid purchase money, and afterwards conveyed the legal title. *Held*, that the judgment is preferred to a mechanics' lien, whose items antedated the judgment. The whole legal and equitable estate passed to the sheriff's vendee under a sale upon said judgment.

VII. The usurious character of the mortgage, or of the assignment thereof, if proved, would not avail as a defense to this suit.

1. If said mortgage was usurious in the hands of Sharpe, and the property had been sold thereon to him, his title would not be affected thereby.

2. There is no evidence of any relationship between the complainants and Sharpe, the holder of the mortgage, or that they ever as heirs, next of kin, or otherwise, took from him any estate whereby they are liable for his acts or defaults.

3. The complainants stand before the court as *bona fide* purchasers at a judicial sale on a foreclosure of this mortgage, without privity with Jesse Sharpe, or notice of any usury in the mortgage.

4. The title of an innocent purchaser, under a foreclosure of mortgage, is not affected by the usurious character of the mortgage. *Wilkinson* v. *Dodds*, 1 Johns. Cas. 158; *Bartlett* v. *Henry*, 10 Johns. 185; *Elliott* v. *Wood*, 53 Barb. 285.

VIII. For the injury threatened by the defendant, there is no sufficient and adequate remedy at law; and a court of equity alone can furnish such remedy.

1. The prevention of a cloud upon title is a salutary branch of equity jurisdiction, universally recognized, and founded on sound principles. High, Inj. § 269.

2. Equity will restrain a sale of land on execution, where such a sale would create a cloud upon the title, although in fact no title would pass thereby. *Pettit* v. *Shepherd*, 5 Paige, 493; *Christie* v. *Hale*, 46 Ill. 117; *Martin* v. *Hewitt*, 44 Ala. 418; *Pixley* v. *Huggins*, 15 Cal. 127; *Englund* v. *Lewis*, 25 Cal. 337; *Shaw* v. *Dwight*, 16 Barb. 536; *Fitts* v. *Davis*, 42 Ill. 391; Hill. Inj. 234.

3. If the threatened sale is such that, in an action of ejectment by the purchaser, the owner would be obliged to offer any evidence to defeat the recovery, then such a cloud could be raised as to warrant a court of equity to prevent such sale. High, Inj. §§ 270–272, 327, 329; *Pixley* v. *Huggins, supra.*

4. One claiming title under a sheriff's deed, under a foreclosure of a mortgage, may in a suit against one who claims under a judgment upon a mechanics' lien, to which he was not a party, go behind the judgment, and show that no lien in fact existed. Phill. Mech. Liens, § 241; *Horn* v. *Jones,* 28 Cal. 194.

5. Where, as in this case, by agreement between the mate-

rial man (Tatnall) and the defendant (rifle club), a judgment was rendered in a suit to enforce a mechanics' lien, and the land and building are ordered to be sold in fraud of the rights of third parties (the complainants), who have acquired title to the premises devested of said lien, such third parties can come into equity to vacate said judgment and enjoin the sale of the premises under it.    Phill. Mech. Liens, *supra; Christian* v. *O'Neal,* 46 Miss. 669.

*Samuel M. Harrington* and *James H. Hoffecker Jr.,* for the defendant:

The Mechanics' Lien Law (passed subsequently to the statute relied on by complainants (Rev. Code, p. 504, chap. 83, § 21), giving purchase-money mortgages preference over judgments), which was in force in this State at the time the defendant furnished the material, filed his claim, and obtained judgment thereon, provides, among other things, " that it shall and may be lawful for any person or persons having performed or furnished work and labor, or materials, or both, to an amount exceeding $25, in or for the erection, alteration or repair of any house, building, or structure, in pursuance of any contract, express or implied, with the owner of such house, building or structure, or with any contractor who shall have contracted for the erection, alteration, or repair of the same, and for the furnishing of the whole or any part of the materials therefor,—to obtain a lien upon such building, house, or structure, and upon the ground upon which the same may be situated or erected," etc.    The statement of claim shall contain and set forth " the names of the party, claimant, and owner or reputed owner of the building, house, or structure, and also of the contractor, and whether the contract of the claimant was made with such owner or with such contractor."

" Any judgment obtained upon such claim, as hereinafter provided, shall become a lien upon such building, house or structure, and upon the ground upon which the same is situated, erected or constructed, and shall relate back to the day

upon which said work and labor was begun, or the furnishing of said material was commenced, and shall take priority accordingly."

"Nothing herein contained shall be construed to impair or otherwise affect the right of any person, to whom any debt may be due for work and labor done or materials furnished, to maintain any personal action against the owner or contractor of such building, house or structure to recover the amount of such debt; nor shall anything herein contained be so construed as to render property liable to liens under this Act, for repairs, alterations or additions, where the same has been altered, added to, or repaired by or at the instance of any lessee or tenant without the written consent of the owner or owners, or his, her or their duly authorized agent first had and obtained." Rev. Code 1874, p. 668.

The Pennsylvania Statute of April 1, 1803, subjected dwelling-houses and other buildings (in Philadelphia, etc.) to the payment of debts contracted by the owner thereof, to a lien for work or materials, "before any other lien which originated subsequent to the commencement of the said house or other building." The Act of March 17, 1806, omitted the words "by the owner or owners thereof." Under these Acts the question soon arose as to what estate is affected by the lien in cases where tenants for years or for life or owners of equities build. *Held,* that the lien arose from a credit given to the building, not to the owners; that all the remaindermen and reversioners were benefited by the building, and that it was just that the whole estate should be bound. *Savoy* v. *Jones,* 2 Rawle, 350.

Then came the Act of June 16, 1836, by which the lien of such debt was extended "to the ground covered by such building, and to so much other ground immediately adjacent thereto and belonging in like manner to the owner of such building, as may be necessary for the ordinary and useful purposes of such building." And by § 10 "The lien for work and materials as aforesaid shall be preferred to every other lien or incumbrance which attached upon such building and ground, or either of them, subsequently to the commencement of such building."

In *Bickel* v. *James*, 7 Watts, 9, which arose under that Act, it was held that "An equitable vendee of a lot of ground, who has not paid the purchase money, by building a house upon it subjects it to the lien of mechanics and material men; and if sold upon such lien the sheriff's deed vests in the purchaser a good title, against which the vendor cannot recover in ejectment upon his legal title." See also *Anshutz* v. *Mc-Clelland*, 5 Watts, 487.

The Act of June 16, 1836, provided that the lien "shall extend to the ground covered by such buildings, and to so much other ground immediately adjacent thereto, and belonging in like manner to the owner of such building, as may be necessary for the ordinary and useful purposes of such building."

In September, 1839, it was decided that "A tenant for years of a lot of ground, who procures a building to be erected thereupon, thereby subjects it to a lien in favor of the mechanics and material men for their work, labor and materials furnished; and a proceeding thereupon to judgment, execution, and sale of the property will devest the owner of the fee simple of his estate, and vest the same in the purchaser from the sheriff." *Holdship* v. *Abercrombie*, 9 Watts, 53.

The Act of April 28, 1840, provided that the lien should not be "construed to extend to any other or greater estate in the ground on which any building may be erected than that of the person or persons in possession at the time of commencing the said building and at whose instance the same is erected; nor shall any other or greater estate than that above described be sold by virtue of any execution authorized or directed in the Act of June 16, 1836." See the construction of this Act in *O'Conner* v. *Warner*, 4 Watts & S. 223.

*Chief Justice* Gibson shows how this Act, confining the lien to the estate of him who caused the building to be erected, would, where the person in possession has but an equitable title, postpone mechanics' and material men's liens to the vendor's claim for the purchase money.

Our statute has no such clause. It stands as the Pennsyl-

vania law stood prior to the Act of 1840, except as to the right of lessees or tenants to subject to liens without written consent.

Under the Pennsylvania Acts prior to 1836, it was held " that where an unfinished house in the City of Philadelphia was sold, and a mortgage given to secure the purchase money, which was immediately recorded, and the vendee then went on with the building, the debts of the workmen and persons who furnished materials for the building, after the recording of the mortgage, should be preferred to the mortgage." *American Fire Ins. Co.* v. *Pringle*, 2 Serg. & R. 138.

The Delaware Statute is illustrated by the above case. The present case is, however, much stronger on behalf of the material men.

Where it was intended to restrict the lien to cases where the contract was made with the owner of the land, and to the extent of his interest in it, the statutes so expressly provide.

Thus in New York under the Act of 1851 a mechanics' lien attaches only to the legal right, title, and interest of the owner existing at the time of filing (*Ernst* v. *Reed*, 49 Barb. 367; *Cox* v. *Broderick*, 4 E. D. Smith, 721); and a contractor who has an equitable title to the land is deemed the owner. *Belmont* v. *Smith*, 1 Duer, 675.

As to the Act of 1852, see *Ombony* v. *Jones*, 19 N. Y. 234; as to the Act of 1862, see *Rollin* v. *Cross*, 45 N. Y. 766.

By the Act of 1863 no lien exists unless the contract be made with the owner of the premises. *Muldoon* v. *Pitt*, 54 N. Y. 269. See *Lyon* v. *McGuffey*, 4 Pa. 127.

It cannot be doubted that, under our statute, this lien fastened upon the fee simple from and after May 23, 1871. If the society had mortgaged the premises after that date, the mechanics' lien would have taken priority. The society's title was subject to that lien. That incumbered title was all it could convey. And when it sold, the lien for the purchase money or its purchase-money mortgage was precisely, to the extent of its interest, of the same grade and character that its own mortgage would have been if given instead of a deed.

The vested right of purchasers or incumbrancers, and, reciprocally, the liens of mechanics, are not affected or displaced, when once attached, by other rights subsequently accruing. *Meehan* v. *Williams*, 2 Daly, 367.

The lien attaches from the commencement of furnishing the materials; and, the contract being an entirety, mortgagees who loan money prior to the last delivery of materials will be postponed to it. *Monroe* v. *West*, 12 Iowa, 119; *Milner* v. *Norris*, 13 Minn. 455.

In those States where the authority of a contractor under the lien law is coextensive with the necessities of the building, and endures until it is finished, a contract for the erection of a house is in effect a power to charge the land for the purposes of the contract, and the commencement of the building is notice to all the world of the existence of the power. And where the property was sold during its erection, and after a short interval the contractor was permitted to go on and complete the building,—to hold the land discharged under such circumstances would be highly unjust to those who furnished materials in reliance upon its protection. They have an equity which the purchaser of an unfinished house, who suffers it to be finished afterwards on the credit of the original authority, plainly wants. *Mears* v. *Dickerson*, 2 Phila. 19; *Miller* v. *Barroll*, 14 Md. 173.

A mortgage prior to the delivery of any materials will be preferred to its full extent in a contest with mechanics. *Jessup* v. *Stone*, 13 Wis. 467.

Therefore, in this case, if the purchase-money mortgage had been made June 21, 1871, before any materials had been delivered, it would have taken priority if recorded within 60 days. Other mortgages would take rank according to date of recording. If contractor or material man commenced work or delivery of materials before such mortgage is recorded, his lien would take priority. The principle is that when the mortgage is not executed until the lien of the mechanic has attached, the former will be subordinated to the latter. *Mitchel* v. *Evans*, 2 Bro. (Pa.) 329; *Stuyvesant* v.

*Browning,* 1 Jones & S. 203 ; *Morris County Bank* v. *Rock-away Manufacturing Co.* 1 McCart. 189.

If this lien of the defendant attached to the fee simple, the vendor's lien or a purchase-money mortgage is postponed to it.

The defendant claims that such a lien as the present one is was not intended to be embraced in the law (Rev. Code, p. 681) in relation to the discharge of liens by execution sales.

This is a lien specially given by statute, and clings to the building until satisfied, even in the hands of a purchaser at sheriff's sale upon a lien subsequently obtained, in a case where, like this, the rifle club, whose land was sold under the mortgage, had taken title subject to this mechanics' lien. In fact, it was a lien upon the agricultural society's land, similar in its nature to a mortgage given by that society. It was not simply a lien "against the defendant" (the rifle club) in the *levari facias,* such as is meant by the statute last above quoted. That club was a defendant in the mechanics' lien suit simply as "owner or reputed owner and contractor." A claim so filed became a lien on the real owner's land, whoever he might be. The real defendant was the agricultural society. The real defendant, the action being *in rem,* was the land and buildings.

The statute last above referred to seems to refer to cases where the judgment or lien on the land is also a personal claim against the defendant in the execution, created by him against his own land, and not to liens upon lands of another (although given by statute on the act or contract of the party who afterwards becomes the owner), subject to which liens said defendant in the execution takes title.

THE CHANCELLOR.—In the view which I take of this case, it is not necessary for me to consider many of the interesting questions which have been argued, arising under the Act known as the Mechanics' Lien Law, as amended March 29, 1871 (Rev. Code, p. 668); nor is it material that I should decide any of the controverted questions of fact.

It is not disputed that the premises known as "the agricultural fair grounds were sold and conveyed to the complainants by the sheriff of New Castle County, under a writ of *levari facias* to the November Term, 1874, issued on a judgment recovered against the Wilmington Rifle Club upon a mortgage for $12,000 executed by said rifle club to the Agricultural Society of New Castle County, dated June 21, 1871, and recorded July 5, 1871, and subsequently assigned to Jesse Sharpe, since deceased. For the purposes of this case it is of no consequence whether this mortgage was or was not a "purchase-money mortgage," or whether it was executed and delivered at the time of the execution and delivery of the deed by the agricultural society to the rifle club or afterwards. It was certainly a lien on the premises from the time it was recorded, July 5, 1871.

It is claimed by the defendant that said mortgage, and also the assignment of the same to Jesse Sharpe, were usurious and void, and that no valid title could be sold under said mortgage. I am not satisfied, from the evidence, that said mortgage or assignment was in fact usurious; but if they were both usurious, this defense would be of no avail in this suit. There is no allegation in the pleadings, or evidence of any kind, of any privity between the said Jesse Sharpe and the complainants, or of any knowledge by the complainants of the usurious character of said mortgage or assignment; and they must therefore be considered by this court as *bona fide* purchasers, without notice of any of the circumstances alleged by the defendant as impeaching the validity of said mortgage or assignment. It is well settled that the title of an innocent purchaser of land at a judicial sale under a mortgage is not affected by the usurious character of said mortgage. *Wilkinson* v. *Dodds*, 1 Johns. Cas. 158; *Bartlett* v. *Henry*, 10 Johns. 185; *Elliott* v. *Wood*, 53 Barb. 285.

The testimony is somewhat conflicting as to the time of the delivery of said deed to the rifle club; but supposing it was delivered on the day it bears date, May 19, 1871, and that said club was seised in fee simple of the premises when the

furnishing of the materials was commenced, May 23, 1871, and afterwards while the furnishing of said materials was continued; and that the lien of the judgment of the defendant under the Mechanics' Lien Law relates back to the said May 23, 1871,—the question remains as to the effect of the sale of the premises under said mortgage. It is contended by the defendant that his said lien was not affected by said sale, but that said sale was subject to the lien of his said judgment, and that he has now the right to sell the premises under his said judgment.

The court of errors and appeals in 1828, in the case of *State* v. *Vickory*, 1 Harrington, 193, held that the sale of land by the sheriff, under a junior judgment, discharged the land sold from the lien of a prior recognizance in the orphans' court, and declared the law to be settled by practice and by the decision of the court of appeals that, if land be sold under a junior judgment, the lien of a prior judgment is discharged.

In the case of *Farmers Bank* v. *Wallace*, 3 Harrington, 370, it was held that lands sold by the sheriff in execution of a judgment are discharged, in the purchaser's hands, of all judgment liens, whether due or not due; and that it is the policy of the law to disincumber lands as much as possible from all liens which a sale could possibly remove.

Section 1 of the "Act in Relation to Sales of Real Estate under Execution Process," passed March 29, 1871 (Rev. Code, p. 681), provides "that real estate sold by virtue of execution process shall be discharged from all liens thereon against the defendant . . . whose property such real estate is, except such liens as have been created by mortgage or mortgages prior to any general liens."

This statute is conclusive as to the effect of the sale of the premises by virtue of the execution under said mortgage. The only liens against a defendant not discharged by a sale of his lands under execution process against him are mortgages which are prior to any general liens. The lien of H. L. Tatnall is against the rifle club, the defendant in the execution

5 DEL. CH.                   21

under which the property was sold to the complainants. This lien is certainly not a mortgage of any kind. It is a judgment which, while it bound specific property, and may have had relation back to a date prior to its rendition, is as much subject to the provisions of this statute as any general judgment.

The sale and conveyance of said premises to the complainants, by virtue of said writ of *levari facias* to the November Term, 1874, discharged said premises from the lien of said judgment of said defendant, H. L. Tatnall.

Although no valid title to the premises could now be sold or conveyed under said judgment of the defendant, a pretended sale and conveyance under it might cause the complainants expense and trouble, and would cast a cloud upon their title. For such threatened injury by the defendant there is no sufficient or adequate remedy at law. The prevention of a cloud upon title is a salutary branch of equity jurisdiction, universally recognized, and founded upon sound principles. High, Inj. § 269.

Equity will restrain a sale of land on execution where such sale would create a cloud upon the title, although in fact no title would pass thereby. *Pettit* v. *Shepherd*, 5 Paige, 492; *Shaw* v. *Dwight*, 16 Barb. 536; Hill. Inj. 234.

Decreed that the injunction heretofore awarded be made perpetual, and that the defendant pay the costs of suit, etc.