**CEDAR INN, INC., a Delaware Corporation**

**v.**

**KING'S INN, INC., a Delaware Corporation and the United States of America.**

Superior Court of Delaware,
New Castle.

Aug. 5, 1970.

David S. Keil, Wilmington, for Cedar Inn, Inc.

James A. Walsh, Wilmington, for King's Inn, Inc.

F. L. Peter Stone, Wilmington, for United States.

William R. Hitchens, Jr., and Jay P. James, of Morris, James, Hitchens & Williams, Wilmington, for Aims, Inc.

Clair J. Killoran, Wilmington, for J and J Corporation.

Peter Sieglaff, Wilmington, for Delaware Trust Co.

John Biggs, III, Wilmington, for Investment and Service Co., Inc.

John A. Faraone, Wilmington, for Francis W. Corridori, Inc.

Joseph Longobardi, Wilmington, for John J. Smith, Sheriff of New Castle County.

OPINION

CHRISTIE, Judge.

The facts in this case have been stipulated to by all of the parties and may be summarized as follows:

On February 10, 1970, a sale pursuant to writ of levari facias was held on the steps of the Public Building, at 11th and King Streets, Wilmington, Delaware. There were numerous people present.

At that time the Sheriff's auctioneer read aloud the sale poster which included a description of the subject real estate, the terms of the sale, and the fact that the real estate had been taken in execution as the property of King's Inn, Inc., a Delaware corporation.

David S. Keil, Esquire, attorney for Cedar Inn, Inc., which held the second mortgage on the property, read aloud a letter he had written to the Sheriff concerning Delaware Trust Company's first mortgage, wherein it was stated that the property "is being sold subject to a first mortgage and lien held by Delaware Trust Company * * *" The date, original amount, interest rate and recording information as to the mortgage were stated.

Peter Sieglaff, Esquire, attorney for Delaware Trust Company, read aloud a similar statement on behalf of Delaware Trust Company, in which he stated that the property was being sold "subject to a first mortgage lien held by the Delaware Trust Company". He announced that the principal unpaid balance due on the mortgage was $32,241.11, unpaid interest was $962.14 and the per diem rate was $5.37.

The Sheriff's auctioneer announced that he had been advised that certain announcements were going to be made concerning the sale, and that the Sheriff made absolutely no representations in respect to liens, nor would he be held accountable for any announcements in respect thereto, no announcements having been authorized by the Sheriff.

Mr. Keil opened the bidding at $30,000. A Mr. Spiro, of Aims, Inc., bid against Mr. Keil until Mr. Keil dropped out of the bidding upon Mr. Spiro's bid of $63,000. A Mr. Shannahan, of J and J Corporation, entered the bidding at $70,000. The bidding progressed with Mr. Spiro eventually bidding a high of $118,000 followed by Mr. Shannahan's bid of $120,000. There were no other bids and the Sheriff's auctioneer closed the bidding, knocking down the property at $120,000 to J and J Corporation.

On March 5, 1970, Aims, Inc., filed a petition for a rule to show cause why the sale should not be set aside and this Court signed an order to stay the confirmation of the sale, originally scheduled to be confirmed on March 6, 1970. The order also required that a rule to show cause why the sale should not be set aside be served upon Cedar Inn, Inc., J and J Corporation, and John J. Smith, Sheriff, returnable to this Court on March 12, 1970.

On that date a presentation of the facts, issues and positions thereon of all interested parties (excepting the Sheriff, who was not present) was made to the Court. In addition, an order to deposit the $120,000 held by the Sheriff (the balance of which was earlier deposited with him) in Wilmington Savings Fund Society was signed by the Court pending further order of the Court.

A search of the records in the Office of the Recorder of Deeds and the Office of the Prothonotary in and for New Castle County would disclose *inter alia* liens of record in order of their priorities as follows:

1. Mortgage held by Cedar Inn, Inc., dated December 12, 1962, recorded in Mortgage Record O–57–413 in the original amount of $70,000. At the time of sale the amount due on the mortgage was about $61,000.

2. Mortgage held by Delaware Trust Company dated November 19, 1963, in the original amount of $64,000 and recorded in Mortgage Record Y–58–385.

On or about the date of this mortgage Delaware Trust Company and Cedar Inn, Inc., had entered into an agreement under the terms of which the Cedar Inn, Inc., mortgage was subordinated to the lien of the Delaware Trust Company mortgage rendering the Delaware Trust Company mortgage a first lien. This agreement was recorded November 19, 1963, in Deed Record E–72–292.

3. Judgment bond in favor of Delaware Trust Company dated November 19, 1963, in the original amount of $60,000 and recorded in Judgment Record M–9–539 on November 20, 1963.

There are other later liens held by various creditors, some of whom were bidders at the sale.

It is the position of counsel for the petitioner, Aims, Inc., who was second highest bidder at the sale, that Aims was led to believe, by the announcements made at the sale, that Delaware Trust Company by stating that the sale was "subject to the first mortgage" had elected to rely solely on its first mortgage and had given up any position it had under its bond. Thus, Aims was under the impression that the successful bidder would be required to pay the bid price and would still be liable for the entire balance announced as being due on the first mortgage. Based upon that understanding of the announcements Aims dropped out of the bidding at $118,000, believing that it had in effect offered a total price of the $118,000 bid plus the $34,000 unpaid mortgage balance, a total obligation of approximately $152,000.

Petitioner alleges that only after the sale was over it was disclosed that the Delaware Trust Company also relied on its judgment bond securing the same indebtedness and, therefore, Aims learned for the first time that the mortgage in-

debtedness would be paid off out of the proceeds of the sale.

Petitioner argues that Delaware Trust Company's failure to instruct prospective bidders that it was relying on its first mortgage only to the extent that the debt was not discharged by the application of sale proceeds to its judgment lien, was misleading to all the bidders and resulted in depressed bidding. Petitioner was not aware that the judgment bond covered the same debt as the mortgage and apparently assumed that it was a separate debt.

Petitioner wishes to set the sale aside and promises to bid at least $120,000 at a resale. All other interested parties oppose the motion to set aside the sale but they are in sharp disagreement as to whether the bank which holds a first mortgage may participate in the distribution of the proceeds of the sale under a judgment bond securing the same debt.

Delaware Trust Company has argued that the recorded order and time of filing of the mortgage and bond was sufficient to put petitioner on notice that the mortgage and the bond covered the same debt. It further argues that under the provisions of 10 Del.C. § 4985, as discussed by Judge Woolley in Woolley on Delaware Practice (Vol. II), § 140, proceeds of the sale must be distributed after payment of the second mortgage first to Delaware Trust Company as first general lienholder and that payment of this lien will be applied to the mortgage indebtedness which both the mortgage and bond secured. The statute reads as follows:

§ 4985. Discharge of liens upon execution sale; exceptions

"Real estate sold by virtue of execution process shall be discharged from all liens thereon against the defendant, or against one or more of the defendants (if there is more than one), whose property such real estate is, except such liens as have been created by mortgage or mortgages prior to any general liens; and with re-

spect to such, the sale shall be a discharge to the extent to which the proceeds thereof may be legally applicable to a judgment or judgments obtained for the debt, to secure the payment of which the mortgage or mortgages respectively (if there is more than one) appear to have been given, and the real estate shall also be discharged from all right of dower and curtesy therein of any defendant in the execution." (10 Del.C. § 4985)

Woolley on Delaware Practice (Vol. II).

Section. 1140, construes the above quoted statute as follows:

"If the order of liens against the land, created by the defendant in the writ, is (a) mortgage lien, (b) general lien and (c) general lien or liens, and the sale is upon (a) the mortgage lien, the distribution is made first to costs, second to taxes, third to the mortgage lien, fourth to the first general lien and fifth to the second general lien and all succeeding liens in the order of their entry and priority, and the land is wholly discharged from all liens, whether the proceeds are sufficient to reach and satisfy all of them or not.

But if the order of liens is, as in the last illustration, (a) mortgage lien, (b) general lien and (c) general lien or liens, and the sale is held upon an execution upon (b) the second lien, which is a general lien, or upon (c) the third lien, which is another general lien, the statute determines the method of application and discharge, by providing that 'real estate * * * shall be discharged from all liens thereon against the defendant * * * *except* such liens as have been created by mortgage or mortgages, *prior* to any general liens.' The first lien being a lien 'created by mortgage,' and being *prior* to a general lien, is within the exception, and is not discharged by the sale and does not share in the distribution of the proceeds. The proceeds of sale are then applied, first to costs,

second to taxes, third to (b) the first general lien, and fourth to (c) the second general lien and succeeding liens in the order of their entry and priority. The land is purchased *subject* to the mortgage lien, and it is discharged from all liens subsequent to it, whether the proceeds are sufficient to reach and satisfy all of them or not.

But in the last illustration of (a) mortgage lien (b) general lien and (c) general lien or liens, if (b), a general lien is the lien of a judgment entered upon the bond accompanying (a) the mortgage lien, and the sale is held upon (c) a general lien and the third of the liens, the money applied to (b) the general lien entered on the bond accompanying the mortgage lien, will operate as a discharge of the first mortgage lien to the extent to which the proceeds may be legally applicable to (b) the judgment obtained on the bond to secure the debt for which the (a) mortgage was given, but will not operate as a discharge of the mortgage as a security for the residue of the debt."

Delaware Trust Company argues that this case is exactly the same in all material respects as the case discussed in Woolley. The sale was brought on the Cedar Inn second mortgage foreclosure and because Delaware Trust did not join in the foreclosure, no proceeds are to be applied directly to its first mortgage lien as such. However, as in Judge Woolley's example, the proceeds are applicable to Delaware Trust's judgment bond since such judgment was the first entered and any such payment will operate to discharge the mortgage lien to the extent that the balance on the mortgage obligation is reduced by payment on the underlying judgment.

█ In view of the statute and the recorded judgment I conclude that petitioner knew or should have known that such would be the order of distribution of the sale proceeds. If petitioner had any doubt about the status of the judgment, the bur-

den was on petitioner to make inquiry. Any announcements made at the sale did not change the statutory law.

The successful bidder, J and J Corporation, supports the position of Delaware Trust Company and argues that, under the circumstances, it is entitled to the property free and clear of the mortgage since the sale price was sufficient to pay off the second mortgage and also the entered judgment bond which was secured by the first mortgage.

Investment and Services Co., Inc., and Francis W. Corridori, Inc., two of the judgment creditors with liens junior to those of Cedar Inn and Delaware Trust Company have argued that the sale should not be set aside, but that Delaware Trust Company, by virtue of its announcement that sale was "subject to" its first mortgage has elected to pursue only its remedy through the first mortgage lien and has waived any position it may have had on account of its first judgment lien.

■ The position taken by Investment and Services Co. and by Francis W. Corridori, Inc., as to the application of the proceeds of the sale finds no support in the authorities cited. Delaware law as contained in the statute and explained by Woolley contemplates that the holder of a first mortgage lien may participate as a judgment creditor in the proceeds of a sale even though the sale was subject to the first mortgage. The authorities cited for a different rule deal with marshalling of assets where there is more than one property subject to liens. Such case law finds no application here.

■ Under 10 Del.C. § 4985 the bank may look to its position as a lien creditor for satisfaction of the debt. By electing to permit the sale to be made "subject to" the first mortgage, it has in no way forfeited its right to participate in the distribution of the sale proceeds as a general lienholder in accord with its priority as an ordinary judgment creditor. The sale was indeed "subject to the first mortgage" but under the law all or some part of the debt secured by the first mortgage might be paid off on account of the banks additional standing as a judgment creditor.

■ The entire law on this subject was not explained before the auction but the bidders cannot have the sale set aside on account of lack of familiarity with the fine points of the statutory provisions. Since Delaware Trust had both a first mortgage and a judgment bond the world was on notice that any payment on the judgment bond "legally applicable" to the indebtedness secured by the mortgage would be so applied without disturbing the priority of any remaining balance due of the mortgage. The mere existence of a judgment held by the same party as the first mortgage brings the statutory provision into possible operation and puts prospective bidders on notice that they should inquire further.

■ It is the opinion of the Court that any misunderstanding which may have resulted from the announcement was not such as to justify the setting aside of the sale. There is no contention by any party that the sale price was grossly inadequate and there is no assurance from anyone that on resale a price of substantially more than $120,000 may be anticipated.

Most of the cases cited by petitioner where sheriffs' sales were set aside are cases where a grossly inadequate price was shown to exist in addition to other defects in the sale. No party was able to find a case closely paralleling this case in its facts.

It is the further opinion of the Court that Delaware Trust Company, although it announced that the sale was to be made subject to its first mortgage, is still entitled to participate in the sale proceeds as first general lienholder under its judgment bond given to secure the same indebtedness as the mortgage. Had no announcement been made at the sale such participation in the proceeds would clearly have been proper

under 10 Del.C. § 4985 and in accordance with Judge Woolley's construction of the statute. The proceeds of the sale remained "legally applicable" to the judgment of the Delaware Trust Company within the meaning of 10 Del.C. § 4985 and without regard to any announcement.

A better announcement might have included a more complete analysis and application of the statutory law. It would have been clearer to all concerned if the announcement had indicated that the indebtedness secured by the first mortgage was the same indebtedness as that secured by the first judgment lien and that the first mortgage indebtedness might be reduced by any available proceeds from the sale if funds remained after payment of expenses, taxes and the indebtedness secured by the second mortgage. This would, however, have been nothing more than an application of the provisions of statutory law to facts which were known or could have been found out by reasonable inquiry. The bank was not required to make any announcement. Its failure to make the best possible announcement did not change the applicable law or amount to a waiver or an estoppel.

In light of the above, it is the ruling of the Court that the sale was properly conducted. The announcements were understood by and did not mislead the bidders who knew the statutory provisions and had taken reasonable steps to learn the state of the title. The cash proceeds of the sale after sale expenses and tax liens are to be distributed to Cedar Inn, Inc., the second mortgagee, and then to the general lienholders in order of priority. Under the unusual facts here present since Delaware Trust Company happens to be the first lienholder under its judgment bond it will receive funds it must apply to the debt which happens to have been also secured by its first mortgage.

The attorney for Delaware Trust Company is requested to prepare an appropriate order to carry out the decisions herein contained including:

1. A denial of the petition to set aside the Sheriff's sale by dismissing the rule to show cause why the sale should not be set aside.

2. A confirmation of the sale.

3. An instruction that the distribution of proceeds of the sale (after expenses and taxes) shall be made in accord with the provisions of 10 Del. C. § 4985 as interpreted in this opinion so as to permit Delaware Trust Company to participate in the proceeds of the sale as the holder of a first judgment lien subject to the further requirements of the statute.

Approval of the form of the order should be sought from all counsel. If such approval is not promptly available presentation of the proposed order, after notice to all counsel, is requested.