**EASTERN SAVINGS BANK, FSB, Defendant Below, Appellants,**

v.

**CACH, LLC, Plaintiffs Below, Appellees.**

**No. 88, 2012.**

Supreme Court of Delaware.

Submitted: July 5, 2012.

Decided: Aug. 24, 2012.

Reargument Denied Sept. 12, 2012.

David E. Matlusky and Brett Bendistis, The Matlusky Firm, LLC, Wilmington, Delaware, for appellants.

Patrick Scanlon, Law Offices of Patrick Scanlon, P.A., Milford, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

STEELE, Chief Justice:

The New Castle County Sheriff sold real property encumbered with a judgment lien and a mortgage lien, in that order of priority, at a mandated sheriff's sale. The Sheriff disbursed the proceeds to Eastern Savings Bank, the mortgage lien holder. CACH, LLC, the judgment lien holder, filed a complaint in the Court of Common Pleas alleging misappropriation and unjust enrichment. The Court of Common Pleas judge denied CACH's Motion for Summary Judgment and granted Eastern's Motion to Dismiss for failure to state a claim. The Superior Court judge reversed. On appeal, Eastern argues that the sheriff's sale did not discharge the judgment lien, and therefore CACH is not entitled to the sale proceeds. We find no merit to Eastern's argument and hold that: (1) all nonmortgage liens are discharged at a sheriff's sale and (2) sheriff's sale proceeds are disbursed according to a first in time, first in line priority. Therefore, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On December 7, 2006, CACH, LLC obtained a judgment lien against Aaron

Johnson to satisfy a deficiency balance on Johnson's car loan. CACH duly recorded its judgment as a property lien on December 21, 2006. As of that date, Aaron Johnson owned real property located at 19 Sanford Drive, in Newark, Delaware.

On December 19, 2006, Aaron Johnson executed a deed conveying his property to himself and his wife as tenants by the entirety. Later that day, Johnson and his wife mortgaged the property to Eastern Savings Bank, FSB for $168,000. The conveyance and the mortgage, however, were not duly recorded until December 29, 2006.

After the housing bubble burst, Eastern filed a foreclosure action in August 2008. CACH notified Eastern that CACH's judgment lien had priority over Eastern's mortgage lien. The judgment lien totaled $16,041.28 as of the date Eastern filed the foreclosure action. At the April 2009 sheriff's sale, Mile High Investments, Inc. purchased the property for $133,000 and the Sheriff sent the proceeds to the attorney for Eastern. No excess proceeds remained for CACH after costs and partial satisfaction of the mortgage.

CACH filed a complaint in the Court of Common Pleas against Eastern. The complaint alleged two counts: (1) misappropriation of the funds received from the sheriff's sale and (2) unjust enrichment by keeping the portion of the sale proceeds that should have been paid to CACH.[1] Eastern filed a Motion to Dismiss for failure to state a claim and CACH filed a Motion for Summary Judgment on the basis that there are no material facts in dispute. The Court of Common Pleas judge denied CACH's Motion for Summary Judgment and granted Eastern's

---

App. to Opening Br. A003.

Motion to Dismiss.[2] The Superior Court judge reversed.[3]

## II. STANDARD OF REVIEW

■■■ The interpretation of statutes is a question of law that this Court reviews *de novo*.[4] When reviewing a grant or denial of summary judgment, we view all facts in the light most favorable to the nonmoving party and apply a *de novo* standard of review to determine whether there is a genuine issue of material fact in dispute.[5]

## III. ANALYSIS

The Superior Court judge held that the sheriff's sale discharged the CACH judgment lien and that the judgment lien must be paid before the mortgage lien, even if the mortgagee filed the foreclosure action. On appeal, we resolve two principal issues: (1) what liens are discharged when real property is sold at a sheriff's sale and (2) in what order are proceeds from the sale disbursed to the discharged lien holders.

### A. Because real property sold at a sheriff's sale is taken free of all nonmortgage liens on the land, CACH's judgment lien was discharged at the sale.

Two statutes, based on the public policy to disencumber lands as much as possible from liens, require the sheriff to discharge all nonmortgage liens when selling proper-

ty at a foreclosure sale. First, according to 10 *Del. C.* § 4985, real property purchased at a sheriff's sale must be free from all liens against the previous owner: "Real estate sold by virtue of execution process shall be discharged from all liens thereon against the defendant ... except such liens as have been created by mortgage or mortgages prior to any general liens."[6] The § 4985 drafters intended purchasers to take the property unencumbered by judgments against the prior owner in order to promote the free transferability of land.[7] The statute contemplates that the prior owner, here Aaron Johnson, be the "defendant" because CACH had a judgment lien against him; therefore, the sale discharges all nonmortgage liens against Johnson's former property.

The second statute cited by the parties, 10 *Del. C.* § 5066, also provides that land sold after foreclosure shall be discharged from all incumbrances incurred by the prior owner.

> The person to whom any lands and tenements shall be sold, or delivered, under § 5065 of this title, and such person's heirs and assigns, shall hold the same, with their appurtenances, for such estate, or estates, as they were sold, or delivered for, discharged from all equity or redemption, and all other incumbrances made and suffered by the mortgagor, the mortgagor's heirs, or assigns; and such sale shall be available in law.[8]

**2.** *CACH, LLC v. Eastern Sav. Bank, FSB*, C.A. CPU4–09–009022, at 9 (Del.Com.Pl. June 11, 2010).

**3.** *CACH, LLC v. Eastern Sav. Bank, FSB*, 2011 WL 4730525, at *5 (Del.Super. Sept. 30, 2011).

**4.** *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del.2007).

**5.** *Williams v. Geier*, 671 A.2d 1368, 1375–76 (Del.1996).

**6.** 10 *Del. C.* § 4985.

**7.** *CACH*, 2011 WL 4730525, at *2 ("It appears to the Court that this statute was enacted to allow purchasers to take property unencumbered by judgments against the prior owner, unless those judgments were supported by a mortgage.").

**8.** 10 *Del. C.* § 5066.

Again, this statute directs that property sold at a sheriff's sale must be free of liens against the mortgagor. We hold that the sheriff's sale purchaser must take the property free of any prior judgment liens against the property. Therefore, Mile High Investments, the purchaser at the sheriff's sale in this case, acquired the property free of CACH's judgment lien. Two cases from the nineteenth century support this interpretation.

In the 1841 case *Farmers' Bank v. Wallace*, the trial judge considered whether land sold by sheriff's sale on a junior judgment lien would either discharge the older judgment lien with proceeds from the sale or be sold subject to the judgment lien.[9] *Wallace* held that the foreclosure discharged both of the judgment liens.[10] Longstanding common law precedent guides us with the settled policy "to disencumber lands as much as possible from all liens, which a sale could possibly remove."[11] The Superior Court judge's decision to discharge CACH's judgment lien is consistent with this long held public policy.

Forty years later, *Sharpe v. Tatnall* presented a similar situation where a mechanic's lien holder argued that land sold at a foreclosure sale was sold subject to the lien because it predated the mortgage.[12] The Court rejected this argument and ruled, "the only liens . . . not discharged by a sale of his lands under execution process against him are mortgages which are prior to any general liens."[13] Because

a mechanic's lien, even though bound to specific property, is not a mortgage, the foreclosure discharged the mechanic's lien. Similarly, because CACH's judgment lien, although recorded as a lien against the property, is not a mortgage, the foreclosure discharged CACH's judgment lien.

Eastern Savings Bank cites two recent cases for the proposition that *Wallace* and *Sharpe* are outdated, but both cases are in fact distinguishable. In the 1984 case of *Atkinson v. B.E.T., Inc.*, the purchaser at a sheriff's sale argued that the property must be free of a restrictive covenant because the sheriff's deed did not mention the requirement to pay for a homeowner's organization.[14] The Vice Chancellor rejected the defendant's argument and held that the defendant purchased the land subject to the restrictive covenant.[15] Eastern latches onto one sentence in the opinion: "[a] purchaser at Sheriff's Sale in Delaware, however, takes title subject to all liens and encumbrances."[16] Although this language would contradict *Farmers' Bank* and *Sharpe*, we find that it is erroneous dicta. The holding in *Atkinson* is limited to restrictive covenants and does not extend to judgment liens.

The most recent case, *PNC Bank, Delaware v. Philben, Inc.*, can also be distinguished.[17] *Philben* presented the Superior Court with the question of whether a utility easement created after a mortgage would survive a foreclosure sale.[18] The judge held that easements created after a

9. *Farmers' Bank v. Wallace*, 3 Del. (3 Harr.) 370 (Super.1841).

10. *Id.*

11. *Id.* at 372.

12. *Sharpe v. Tatnall*, 5 Del.Ch. 302 (Ch.1880).

13. *Id.* at 321.

14. *Atkinson v. B.E.T., Inc.*, 1984 WL 159375 (Del.Ch. Dec. 4, 1984).

15. *Atkinson*, 1984 WL 159375, at *2.

16. *Id.*

17. *PNC Bank, Delaware v. Philben, Inc.*, 1997 WL 717786 (Del.Super. Oct. 1, 1997).

18. *Philben, Inc.*, 1997 WL 717786, at *1–2.

mortgage has been recorded are discharged by foreclosure on the property.[19] Nevertheless, Eastern places great emphasis on the following dicta: "statutory law provides that a purchaser at a Sheriff's sale takes the property subject to any senior liens, while all junior liens are discharged."[20] Given that an easement is a creature completely different from a lien, neither the holding nor the erroneous *dicta* in *Philben* has precedential value to this case.

█ Longstanding statutory and common law precedent requires that land sold at a sheriff's sale be transferred free of all nonmortgage liens. Dicta quoted from *Atkinson* and *Philben* do not overrule this well settled rule. Therefore, we affirm the Superior Court judge's holding that the foreclosure sale discharged all nonmortgage liens, including CACH's judgment lien.

**B. Because sheriff's sale proceeds are distributed according to first in time priority, the CACH judgment lien has priority over the Eastern Savings Bank mortgage.**

█ Having decided that the sheriff's sale discharged the judgment lien, we must determine the order in which proceeds from the sheriff's sale must be distributed. According to Delaware's pure race recording statute, "[a] deed concerning lands or tenements shall have priority from the time that it is recorded in the proper office without respect to the time that it was signed, sealed and delivered."[21] *Black's Law Dictionary* defines a deed as "any written instrument that is signed, sealed, and delivered and that conveys some interest in property."[22] Therefore, a deed would include a mortgage or a judgment lien that has been recorded against a property. CACH recorded its judgment as a lien on the property on December 21, 2006. Eastern did not record its mortgage until December 29, 2006. Because CACH has the first recorded lien, it will be first in line to receive the distributions.

For further confirmation, we also look to Judge Woolley's interpretation of 10 *Del. C.* § 4985 in the treatise *Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware*. Section 1139 of the treatise discusses distribution priority where the land has been encumbered with mortgage liens and general liens.[23] Specifically, Section 1139 analyzes 14 Del. Laws ch. 94, which was the predecessor to 10 *Del. C.* § 4985. Although the statute has a different citation today, the text has remained unchanged for over 100 years: "real estate sold by … execution process shall be discharged from all liens thereon against the defendant … except such liens as have been created by mortgage or mortgages prior to any general liens."[24]

Judge Woolley provides a hypothetical example to demonstrate the order of distribution in a 10 *Del. C.* § 4985 foreclosure sale. According to the illustration, liens on land sold at sheriff's sale are in the order of (1) general lien as a judgment or mechanic's lien, (2) mortgage lien, and (3) another general lien.[25] In this case, the distribution "is made first to costs, second

**19.** *Id.* at *4.

**20.** *Id.*

**21.** 25 *Del. C.* § 153.

**22.** *Black's Law Dictionary* 444 (8th ed.2004).

**23.** 2 Victor B. Woolley, *Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware* § 1139 (1906).

**24.** 10 *Del. C.* § 4985.

**25.** Woolley, *supra*, § 1139.

to taxes, third to wages, when proved, *fourth to the first general lien, fifth to the mortgage lien, and sixth to the third and all succeeding liens* in the order of their entry and priority." [26] This distribution follows a first in time priority consistent with Delaware's "race to the courthouse" statute. The treatise adds that in conclusion, "the land is wholly discharged from all liens against the defendant in the writ, whether the proceeds are sufficient to reach all of them or not." [27]

Finally, we note that our statutory interpretation is consistent with *Cedar Inn, Inc. v. King's Inn, Inc.* [28] *Cedar Inn* involved sheriff's sale property with encumbrances in the following order of priority: (1) Delaware Trust Company mortgage, (2) Cedar Inn, Inc. mortgage, and (3) Delaware Trust Company judgment lien. Cedar Inn foreclosed on the property subject to the Delaware Trust Company mortgage, meaning that Delaware Trust Company's first mortgage remained on the property after the foreclosure sale. In setting the order of distribution for the remaining two liens, the judge held that sheriff's sale proceeds must be paid first to Cedar Inn's mortgage and then to Delaware Trust Company's judgment lien. The opinion, however, did not provide the rule it applied to determine the order of distribution. [29]

The judge in *Cedar Inn* could have applied two different rules to arrive at its holding that Cedar Inn's mortgage must be paid before Delaware Trust Company's lien. CACH contends that the judge applied a first in time, first in line rule. On the other hand, Eastern argues that the judge's reasoning is based on a rule that the foreclosing mortgage is paid before all other liens on the property. We find CACH's interpretation to be the only reasonable interpretation because it is consistent with the race recording statute and Woolley's treatise.

■ No Superior Court judge has ever issued a decision that would directly contradict Judge Woolley's interpretation of the applicable statutory law. [30] Today, we accept the rule established by Judge Woolley as consistent with the race recording statute and affirm the Superior Court judge's holding that the proceeds be distributed according to a first in time, first in line priority of recording.

### C. No ancillary issues preclude CACH's recovery.

■ Eastern argues that three ancillary issues bar CACH's claim. We find that none of them have merit. First, Eastern argues that CACH is not entitled to payment out of the foreclosure sale proceeds because the judgment lien was against Anthony Johnson individually and Eastern's mortgage was against Anthony and Angela Johnson, owners of the property as tenants by the entirety. According to Section 1133 of Woolley's treatise, "[t]he effect of a sheriff's sale of lands under execution process, is not to discharge the lands from *all* incumbrances, but to discharge the lands from the incumbrances *of the defendant in the writ.*" [31] Woolley explained the purpose of Section 1133 with the following

**26.** *Id.* (emphasis added).

**27.** *Id.*

**28.** *Cedar Inn, Inc. v. King's Inn, Inc.*, 269 A.2d 781 (Del.Super.1970).

**29.** The central holding of *Cedar Inn* focused on Delaware Trust Company's unusual position as a mortgage holder and a judgment lien holder.

**30.** *CACH*, 2011 WL 4730525, at *4.

**31.** Woolley, *supra*, § 1133 (emphasis original).

example: "lands sold under execution against a devisee will not discharge a judgment against the testator." [32]

In this case, the fact that Aaron and Angela Johnson owned the property as tenants by the entirety is irrelevant. Eastern's mortgage document lists the borrowers as "Angela A. Johnson and Aaron Johnson, Jr" and both of them signed in their individual capacity.[33] When Eastern foreclosed on its mortgage, the sheriff's sale discharged all liens against the individual defendants Aaron Johnson and Angela Johnson. Therefore, the foreclosure sale discharged the judgment lien because CACH obtained the lien against Aaron Johnson to satisfy a deficiency balance on Johnson's car.

Second, Eastern argues that CACH's claim is an improper collateral attack on a confirmed sheriff's sale. According to Eastern, *Citifinancial Mortg. Corp. v. Edge* stands for the proposition that "objections to a Sheriff sale are waived if not asserted prior to confirmation." [34] Eastern, however, fails to include the entire rule: objections to confirmation of a sale are waived if not filed before the confirmation date, "unless the court finds lack of notice or other basis to relieve the party of the consequences of unexcused delay." [35] As a threshold matter, this case can be distinguished from *Edge* because CACH's claim is not a collateral attack on the sheriff's sale. Rather than objecting to the conduct or amount of the sale or challenging the validity of the sale itself,

CACH is merely contesting the priority of distribution after a proper sheriff's sale. Furthermore, even if we were to characterize CACH's claim as a collateral attack on a confirmed sheriff's sale, the exception in *Edge* would apply. The Sheriff's report of sale did not indicate the order of distribution; thus, CACH never had notice and opportunity to object before confirmation, which excused the delayed objection to disbursement priority.[36]

Finally, Eastern argues that CACH's claim is barred by equitable subrogation. The doctrine of equitable subrogation allows "one who has discharged the debt of another to succeed to the rights of the satisfied creditor." [37] Subrogation rights, however, are available "only to the extent that the refinanced loan proceeds were actually used to pay off the prior mortgages." [38] Because the record does not reflect that proceeds from Eastern's mortgage were used to pay off a prior mortgage on the property, Eastern's claim of equitable subrogation fails.

## IV. CONCLUSION

For the foregoing reasons, the judgments of the Superior Court are affirmed; we remand to Superior Court which will in turn remand to the Court of Common Pleas to enter judgment in accordance with this Opinion.

---

**32.** *Id.*

**33.** App. to Opening Br. A113; *Id.* at A128.

**34.** *Citifinancial Mortg. Corp. v. Edge,* 2003 WL 22683009, at *3 (Del.Super. Nov. 12, 2003).

**35.** *Id.* (quoting *Deibler v. Atlantic Properties Grp., Inc.,* 652 A.2d 553, 556 (Del.1995)).

**36.** App. to Answering Br. B 17.

**37.** *Reserves Dev. LLC v. Severn Sav. Bank, FSB,* 2007 WL 4054231, at *17 (Del.Ch. Nov. 9, 2007).

**38.** *Oldham v. Taylor,* 2003 WL 21786217, at *5 (Del.Ch. Aug. 4, 2003).