# THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| REO TRUST 2017-RPL1, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. NO. N20L-10-029 DJB |
| | ) | |
| SHORT SALE, LLC, | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION

***On Defendant and Interested Party FSC Lending LLC's Joint Motions to Set Aside the Sheriff's Sale* - DENIED**

***On Defendant and Interested Party FSC Lending LLC's Joint Motions to Enforce Payment of the Proceeds* - GRANTED**

Date Submitted: March 17, 2023
Date Decided: June 1, 2023
Date Amended:  August 1, 2023

Janet Charlton, Esquire, and Michael Pak, Esquire, MCCABE, WEISBERG, & CONWAY, LLC, Wilmington, Delaware; *for Plaintiffs.*

Robert J. Valihura, Esquire, MORTON, VALIHURA, & ZERBATO, LLC, Greenville, Delaware; *for Defendant, Short Sale, LLC and Interested Party, FCS Lending, LLC*

**BRENNAN, J.**

## I.     INTRODUCTION

In 2018, Roberta Ziefert was the record owner of 313 S. Broom Street, Wilmington, DE 19805 (hereinafter "the Property"), a townhome located within the condominium community of Towne Estates.  Ziefert died on August 25, 2018, and at the time of her death, the Property was subject to two mortgages.  FCS Lending, LLC (hereinafter "FCS") held the senior mortgage; Plaintiff REO Trust 2017-RPL1 (hereinafter "Plaintiff" or "REO Trust") held the junior mortgage.  After Ziefert's Estate failed to pay condominium fees owed on the Property, Towne Estates, the homeowners association (hereinafter "HOA") of the Property, filed a debt action against Ziefert's Estate and eventually obtained a judgment against Ziefert's Estate in the Justice of the Peace Court of Delaware on July 22, 2019.[1]  Towne Estates transferred its judgment to this Court on August 16, 2019,[2] and satisfied the judgment through a Sheriff's sale of the Property on December 10, 2019.[3]  Defendant Short Sale, LLC (hereinafter "Short Sale") purchased the Property at the Sheriff's sale.[4]

During the time the HOA pursued its judgment lien, REO Trust filed its first foreclosure action in this Court on July 26, 2019, through a *sci fa sur* writ and listed the Ziefert Estate as the sole defendant.[5]  The Estate, despite being properly noticed, failed to respond and ultimately REO Trust moved for default judgment on March 24, 2020, a little over three months after the Property's sheriff sale on the HOA judgment.[6]  On September 18, 2020, the Prothonotary issued a writ directing the

---

[1]     *See* N19J-03432 (D.I. 1).
[2]     N19J-03432 (D.I. 1).
[3]     N19J-03432 (D.I. 1, 8-9).
[4]     *Id.*
[5]     *See* N19L-07-083 WCC.  REO Trust initiated this action four days after the Justice of the Peace Court entered judgment in the HOA's favor.
[6]     N19L-07-083 WCC (D.I. 7).

Sheriff of New Castle County to schedule a second sheriff's sale of the Property.[7] REO Trust, however, moved to vacate its judgment over Ziefert's Estate and requested a stay of the sheriff's sale on October 9, 2020, citing the fact that the property [was] sold by a junior lienholder."[8]

Less than a month later, on October 30, 2020, REO Trust filed the instant foreclosure action, solely naming Short Sale as a defendant.[9] Despite being served with a copy of the Complaint, Short Sale did not file an Answer or any responsive pleading.[10] REO Trust moved for default judgment on January 22, 2021, which this Court granted.[11] The Prothonotary issued a writ directing the Sheriff of New Castle County to conduct a sale of the Property,[12] and on April 13, 2021, Short Sale, for the second time, purchased the Property.[13] Immediately following this purchase, Short Sale transferred its interest in the Property to FCS.[14]

Prior to the Sheriff's Office release of the sale proceeds to REO Trust, Short Sale and FCS (collectively "Movants") filed the instant two motions on May 10, 2021. First, Short Sale filed a Motion to Set Aside the Sheriff's Sale, claiming the sale was void due to REO Trust's failure to name Ziefert's Estate, the mortgagor, as a named party.[15] Second, FCS filed a Motion to Enforce Payment, arguing that the Sheriff should release the sale proceeds to FCS as the senior mortgage lien holder

---

[7]     N19L-07-083 WCC (D.I. 11).
[8]     N19L-07-083 WCC (D.I. 12-14).
[9]     N20L-10-209 DJB (D.I. 1).
[10]    N20L-10-209 DJB (D.I. 5).
[11]    N20L-10-209 DJB (D.I. 7).
[12]    N20L-10-029 DJB (D.I. 9).
[13]    Movants' Opening Br., Ex. D, June 17, 2022 (D.I. 32).
[14]    *Id.*
[15]    N20L-10-029 DJB (D.I. 13)

on the property.[16]  REO Trust responded in opposition.[17] The New Castle County Sheriff's Office additionally filed a Response in Opposition to the Motion to Enforce Payment.[18]

On July 28, 2021, the parties advised the Court that they agreed to mediate their claims and requested a temporary stay from the Court's decision on the motions.[19]  However, on October 6, 2021, the parties informed the Court that mediation had failed.[20]  The Court thereafter set a briefing schedule to address the two pending motions.[21]  Thereafter, Movants jointly re-asserted the pending motions and oral argument was held.[22]  At that time, the Court relieved FCS of its requirement to file a formal motion to intervene and orally ruled it may proceed as an "interested party" in this action.

Further argument was heard on February 9, 2023, at which time the Court requested the parties complete further briefing on two limited issues of law. Specifically, the parties were to address: 1) legal support for REO Trust's assertion that the purchaser at a Sheriff's sale steps into the shoes of a mortgagor, and 2) articulation of any actual prejudice suffered which necessitates this sale be vacated. The parties subsequently filed cross-submissions and cross-replies.[23]  This is the Court's decision on both pending motions.

---

[16]    N20L-10-029 DJB (D.I. 14).
[17]    N20L-10-029 DJB (D.I. 17, 18).
[18]    N20L-10-029 DJB (D.I. 19).  Despite having filed this Response in Opposition, the Sheriff's Office never participated in arguments or formally entered these proceedings as an "Interested Party."  The Sheriff's Office attended the initial oral argument held, and was invited to the subsequent oral argument, but never engaged in this litigation beyond this filing.
[19]    N20L-10-029 DJB (D.I. 23).
[20]    N20L-10-029 DJB (D.I. 25).
[21]    N20L-10-029 DJB (D.I. 30).
[22]    N20L-10-029 DJB (D.I. 39).
[23]    N20L-10-029 DJB (D.I. 43-46).

## II. MOTION TO SET ASIDE SHERIFF'S SALE

### A. STANDARD OF REVIEW

Upon a motion to set aside a Sheriff's Sale, the Court has great discretion in its review. [24] The Court, in its review, "must ascertain whether there was 'some defect or irregularity in the process or mode of conducting the sale, or neglect of duty, or misconduct on the part of the Sheriff or some other sufficient matter whereby the right of parties to, or interested in the sale are, or may have been, prejudiced'."[25] "[A] properly conducted sale should be set aside only when necessary to correct a plain injustice consistent with the principles of equity."[26]

### B. DISCUSSION

Short Sale, despite having twice purchased the Property at Sheriff's sale, now seeks to vacate the second sale. Short Sale argues a defect in the proceedings occurred when REO Trust did not notice the Ziefert Estate when seeking *sci fa sur* mortgage foreclosure. Short Sale moves jointly with FCS.[27] REO Trust opposes, first arguing Short Sale has waived any right to challenge the sale, as it failed to respond to the foreclosure Complaint. Alternatively, REO Trust argues the first

---

[24] *Shipley v. New Castle County*, 975 A.2d 764, 767 (Del. 2009) (citing *Burge v. Fidelity Bond & Mortgage Co.*, 648 A.2d 414, 420 (Del. 1994)).

[25] *LSF9 Master Participation Tr. v. Truitt*, 2017 WL 8787509, at *1 (Del. Super. Ct. Oct. 24, 2017).

[26] *Id.* (quoting *Burge*, 648 A.2d at 421).

[27] Curiously enough, Short Sale assigned its winning bid in the foreclosure sale to FCS, the interested party here, who holds the first priority mortgage. While this fact is more relevant to the motion to enforce distribution, it is of particular intrigue because FCS jointly filed this motion to vacate the sheriff's sale with Short Sale.

sheriff's sale extinguished Ziefert's Estate's interest in the Property and therefore the Zierfert Estate was no longer a necessary party to this foreclosure action.

### i.     Movants' Jurisdictional Challenge Was Not Waived.

The Court orally ruled upon the issue of waiver following oral argument. For context and completeness, however, the Court will briefly re-address. REO Trust initially opposed this motion on the basis that Short Sale waived its right to assert the defense of failure to join a party under Superior Court Civil Rules 12(b) and 12(h). REO Trust contends Short Sale should have asserted this defense in its first responsive pleading and by failing to respond to the Complaint, Short Sale cannot now move to vacate based upon an error in procedure. In response, Movants argue that REO Trust's failure to name Ziefert's Estate as a party to this action divested this Court of jurisdiction to foreclose upon the Property under 10 *Del. C.* § 5061 and as a result, the sheriff's sale is void *ab initio*.

REO Trust raises an interesting objection and understandable challenge to this late objection by the very party who has twice successfully bid on the Property, who immediately transferred its interest in the Property to a priority mortgage holder, but yet inexplicably waited until post-Sheriff's sale to jointly challenge the sale.[28] REO Trust is not wrong. Had a jurisdictional challenge not been raised, this Court would have found that Movant's position this late in time was waived. However, because Movants' arguments technically raise a question as to whether this Court has subject matter jurisdiction over the instant foreclosure action, the motions will be heard on

---

[28]     Knowledge cannot be claimed to have been an issue, since in its debt action, Towne Estates was represented by Defendant Short Sale and FCS's counsel in the pending matter. *See* N19J-03432 (D.I. 1).

their merit.  Affording Movants a liberal reading of a jurisdictional challenge, their claims are deemed properly before the Court.[29]

### ii. Jurisdiction is Proper; The Estate Is a Necessary Party to the Sheriff's Sale.

The challenge to this Court's jurisdiction is not successful.  Title 10, Section 5061 of the Delaware Code "vests subject matter jurisdiction in the Superior Court to hear foreclosure actions at law through a writ of *scire facias sur* mortgage."[30] Section 5061(b) also states:

> [i]n addition to the mortgagor, and such mortgagor's heirs, executors, administrators or successors, the following persons shall be necessary parties in every mortgage foreclosure action: (1) Record owners acquiring title subject to the mortgage (terre tenants) which is being foreclosed upon; and (2) Persons having an equitable or legal interest of record, including an interest pursuant to a judicial sale or a statutory sale pursuant to § 8771 et seq. of Title 9.[31]

Clearly, neither Short Sale nor FCS was the mortgagor, as only Roberta Ziefert signed the mortgage document and agreed to take on this debt.  Upon her death, the obligations under this mortgage passed to her Estate.  The procedural history of both this case, as well as the cases which preceded the instant motions, is wholly devoid of the Ziefert Estate ever showing any interest or participation in the sales of the Property.

---

[29]  *Imbraguilo v. Unemployment Ins. Appeals Bd.*, 223 A.3d 875, 878 (Del. 2019) ("a litigant may raise a court's lack of subject matter jurisdiction at any time in the same civil litigation, 'even initially at the highest appellate instance.'") (quoting *Gunn v. McKenna*, 116 A.3d 419, 420-21 (Del. 2015)).  During its initial ruling, the Court explained this decision was premised on a liberal definition of legal concept.

[30]  *Brooks v. BAC Home Loans Servicing, LP*, 53 A.3d 301, 2012 WL 3637238, at *1 (Del. 2012) (TABLE).

[31]  10 *Del. C.* § 5061(b).

Movants claim the Ziefert Estate remains the mortgagor and was required to be named as a party to this action under Section 5061. Conversely, REO Trust contends the Estate's interest in the Property was extinguished when Short Sale purchased the Property at the first sheriff's sale and also that Short Sale subsumed the Estate's mortgage obligations when it purchased the Property. In support of this argument, cites 10 *Del. C.* § 4977.[32] Section 4977 provides that the purchaser of a property at sheriff's sale shall retain the same title that the seller had at the time of sale.[33] REO Trust purportedly filed the instant foreclosure action because Short Sale failed to meet its obligations under the junior mortgage.[34]

A purchaser of land at a Sheriff's sale takes the property subject to any unsatisfied mortgage liens.[35] "Longstanding statutory and common law precedent requires that land sold at a sheriff's sale be transferred free of all nonmortgage liens."[36] However, despite questions at oral argument and supplemental briefing of the parties, there is no decisional case law that states definitively who is responsible to pay any outstanding mortgage on a property sold at a Sheriff's sale. This issue of first impression is ripe for interpretation.

---

[32] Pl.'s Opp'n Br. at 5, July 15, 2022 (D.I. 33).

[33] 10 *Del. C.* § 4977. The statute states in full that "[t]he grantee in any deed, executed under § 4976 of this title, shall hold the premises therein conveyed, with all their appurtenances, as fully and amply, and for such estate and estates, and under such rents and services, as the person or persons, for whose debt, or duty, the property is sold, might, or could, do at or before the taking thereof in execution." *Id.*

[34] *See* Compl. ¶ 7-10, Oct. 30, 2020 (D.I. 1).

[35] *CACH, LLC v. Eastern Sav. Bank, FSB*, 2011 WL 4730525, at *2 (Del. Super. Sept. 30, 2011) ("It appears to the Court that [10 *Del. C.* § 4985] was enacted to allow purchasers to take property unencumbered by judgments against the prior owner, unless those judgments were supported by a mortgage.").

[36] *Eastern Sav. Bank, FSB v. CACH, LLC*, 55 A.3d 344, 349 (Del. 2012).

It is somewhat illogical to assume that the non-discharged mortgage lien will be paid by the original mortgagor, whose property has been sold for non-payment of the mortgage lien. Here, the Estate is the defendant in the original judgment lien writ, the first sale in which Short Sale purchased the Property. Short Sale purchased this property with all mortgage encumbrances remaining. However, it is just as illogical to assume the buyer of a property, who did not specifically subsume a mortgage, is now responsible for its payment. Not only is it illogical, but as Movants point out, it is inconsistent with the controlling statutory law.

Plaintiff argues case law supports their proposition that the purchaser steps into the shoes of the mortgager at the time of the Sheriff's sale, however, the cases cited to are notably distinguishable. For instance, Plaintiff cites to *Wilmington Savings Fund Society v. Gillette*.[37] In *Gillette*, there was a challenge to the notice given in a foreclosure action where only the living owner of the property was noticed. The property there was owned jointly by two individuals, who obtained a mortgage on real property. Following the death of one of the mortgagors, the property was foreclosed upon. The *Gillette* court faced a motion for summary judgment based upon improper notice. In finding that the estate was not a necessary party to the action, *Gillette* recognized that the prior owner specifically left her portion of the property to the living owner in her will and by operation of law, only one true owner remained. Therefore, once that estate was settled, the only noticed defendant was the only proper defendant who needed to be noticed. That is not the issue presented here, and *Gillette* makes it clear that fact was the determinative in its ruling.

---

[37]    *Wilmington Savings Fund Society v. Gillette*, 2017 WL 1191088 (Del. Super. Mar. 29, 2017).

9

In looking beyond decisional law, Woolley's treatise makes it clear that the Estate is, in fact, an interested party who should be noticed under 10 *Del. C.* § 5061. Section 1360 of Woolley's Practice in Civil Actions states: "All persons acquiring title to or tight in mortgaged premises subsequent to the mortgage, take title subject to it, and such title or right is liable to be barred and divested by a sale and conveyance under proceedings by *scire facias*, duly served upon the mortgagor, if living, or upon his executor or administrator, if he be dead."[38]

Therefore, a purchaser at a Sheriff's sale takes title subject to the mortgage but does not "step into the shoes" of the mortgagor.[39] They simply own the property with the understanding that there is a lien, held by another, on the property which can be the subject of a *scire facias* action if defaulted. This is the only logical conclusion, given the fact that all judgment liens are discharged upon a Sheriff's sale, but the mortgage will remain. This appears to be one of the reasons that when Sheriff sales are noticed, they are deemed "buyer beware."[40] Therefore, the Estate should have been noticed and as a result, there has been a defect in the *scire facias* process.

### iii. No Interested Parties are Prejudiced; Vacating the Sale Is Not Necessary to Correct a Plain Injustice.

The issue now turns to whether this defect in this process warrants vacating the sale. Again, because this was not a topic originally briefed or discussed at oral argument, the parties were afforded the opportunity to file supplemental briefing. In

---

[38]   VICTOR B. WOOLLEY, Practice in Civil Actions and Proceedings in the Law Courts in the State of Delaware § 1360 (1906).

[39]   *C.f. Matter of Spencer*, 115 B.R. 471, 477 (D. Del. 1990) (Interpreting the "fundamental principles underlying mortgages in Delaware" finding Delaware is a "lien theory" state in which a mortgage is not a conveyance of title in land, but only provides a chattel interest in property.).

[40]   *See* https://www.newcastlede.gov/172/Sheriff-Sales

their respective responses, the parties each addressed the general theory of prejudice to society if this sale is not vacated. Movants argue prejudice is shown in two ways: the public harm by the violation of the statutory prerequisites to a Sheriff's sale not being properly noticed and prejudice to the Estate by the violation of the process before a Sheriff's sale found in 10 *Del. C.* § 5061(a). REO Trust argues that the public would be harmed if the sale were to be vacated insofar as the sheriff's office would have to change their procedures for proceed distribution following a sale, reversing decades of procedure.[41]

The Court has broad discretion to set aside a Sheriff's sale upon a finding that a party has been prejudiced. Even a sale completed without defect can be set aside when "necessary to correct a plain injustice consistent with the principles of equity."[42] The situation is not as dire as REO Trust argues. The prejudice here is not related to the proceed distribution. Movants position is also not persuasive. General principles of public policy surrounding a Sheriff's sale, in a situation where there is a procedural history that speaks to the non-interest of the Estate, is insufficient.

The most persuasive evidence before the Court that there is insufficient prejudice to warrant the vacation of this sale is the procedural history of both sales of the Property. The record of both sales of the Property, including the initial *scire facias* Complaint in which the Estate was noticed, belies any indication that the Estate would have somehow now participated in these proceedings. A default judgment was obtained against the Estate not once, but twice in judgment proceedings against the Property. There is simply no evidence that the Estate would have acted any differently going forward. In fact, there is actual evidence that they

---

[41]    Pl. Letter Subm. Dated Mar. 17, 2023. D.1. 45

[42]    *Burge v. Fidelity Bond and Mortg. Co.*, 648 A.2d 414, 421 (Del. 1994).

would continue to default, since that is exactly what occurred in the initial *scire facias* complaint prior to REO Trust's move to vacate the judgment and halt the initial sale.

Moreover, even if the analysis is one of prejudice towards Movants, they simply cannot meet their burden here. Because Sheriff's sales are buyer beware and Short Sale was specifically warned about title searches, the risk is on them. Additionally, once the sale is confirmed by the Court as being legally sufficient, the argument regarding being unable to obtain title insurance due to an alleged irregularity becomes moot.

## III.   Motion to Enforce Sale Proceeds

Alternatively, Short Sale and FCS move to enforce the proceed distribution so that FCS is paid ahead of REO Trust. In support, Movants argue that FCS is entitled to the proceeds from the second sheriff's sale as their mortgage was recorded first and is an uncontested first priority mortgagee. REO Trust asserts that Movants misinterpret Delaware law and proceeds go to the foreclosing lender regardless of mortgage priority status.

Unlike the previous issue, the Delaware Supreme Court has addressed Sheriff's sale proceed distribution. In *Eastern Savings Bank*, *FSB v. CACH, LLC*., the Supreme Court reviewed the order liens are discharged upon Sheriff's sale and, in which priority liens are to be paid with sale proceeds. [43] In its analysis regarding lien priority, the Supreme Court turned to Judge Woolley's treatise for interpretation of the *scire facias sur* mortgage statutes. The Court reaffirmed the proposition of the Woolley Treatise that Delaware is a "first in time, first in line" state when determining priority. This decision interprets and is consistent with 25 *Del. C.*§

---

[43]     *Eastern Savings Bank*, *FSB v. CACH, LLC*., 55 A.3d 344 (Del. 2012).

2106. *Eastern Savings* was faced with a property encumbered by two liens: a first priority judgment lien (held by defendant CACH, LLC) and a mortgage lien, held by Eastern Savings Bank. Following non-payment, Eastern Savings Bank moved for foreclosure and the property was sold at sheriff's sale. CACH, LLC., sued for misappropriation of funds and unjust enrichment due to Eastern Savings Bank having been paid over their higher priority judgment lien. The Supreme Court agreed.

Just as REO Trust does here, Eastern Savings Bank argued that the prior Superior Court decision in *Cedar Inn v. King's Inn., Inc.*,[44] allows the Court to find that the foreclosing lien holder takes priority in sale distribution despite holding a subordinate priority lien. As *Eastern Savings* articulated:

> The judge in *Cedar Inn* could have applied two different rules to arrive at its holding that Cedar Inn's mortgage must be paid before Delaware Trust Company's lien. CACH contends that the judge applied a first in time, first in line rule. On the other hand, Eastern argues that the judge's reasoning is based on a rule that the foreclosing mortgage is paid before all other liens on the property. We find CACH's interpretation to be the only reasonable interpretation because it is consistent with the race recording statute and Woolley's treatise.[45]

The *Eastern Savings* litigation continued through multiple appeals and eventually the Supreme Court had the opportunity to once again, revisit this ruling. In its second review, the Court cited § 2106 and held that the mortgage which was filed first, has priority in sale distribution.

Plaintiff misreads the *Eastern Savings* decisions and its interpretation of its analysis of *Cedar Inn*. Eastern *Savings* makes it clear that Delaware's "first in time, first in line" priority means the first party to record its lien has priority in sale

---

[44]     *Cedar Inn v. King's Inn, Inc.*, 269 A.2d 781 (Del. Super. 1970).
[45]     *Eastern Savings*, 55 A.3d at 350.

distribution. Following Woolley's treatise and *Eastern Savings*, regardless of who initiates a foreclosure action first, FCS's first priority mortgage has priority in this sheriff's sale distribution.

REO Trust argues that *Eastern Savings* is distinguishable in that it analyzed lien priority between a general priority lien and a mortgage lien, while here we have two mortgage liens, both of which would remain on the property, should sale proceeds be insufficient to satisfy each debt. REO Trust is correct that this is a notable difference. Following the legal precedent here leads to somewhat of an inequitable result in that the non-foreclosing entity reaps the benefit of the time and money spent by REO Trust to satisfy their judgment. However, *Eastern Savings* made no mention of this being a determinative factor in its decision. Arguably Judge Woolley wrote in a time where it was not commonplace to have multiple mortgages encumbering one property, his Treatise remains precedential and of value to the Court now. [46]

> Section 1140 of Woolley's treatise reads:
>
> If the order of liens against the land, created by the defendant in the writ, is (a) mortgage lien, (b) general lien and (c) general lien or liens, and the sale is upon (a) the mortgage lien, the distribution is made first to costs, second to taxes, third to the mortgage lien, fourth to the first general lien and fifth to the second general lien and all succeeding liens in the order of their entry and priority, and the land is wholly discharged from all liens, whether the proceeds are sufficient to reach and satisfy all of them or not.
>
> But if the order of liens is, as in the last illustration, (a) mortgage lien, (b) general lien and (c) general lien or liens, and the sale is held upon an execution upon (b) the second lien, which is a general lien, or upon (c) the third lien, which is another general lien, the statute determines the method of application and discharge, by providing that 'real estate

---

[46]    *Id.* ("No Superior Court judge has ever issued a decision that would directly contradict Judge Woolley's interpretation of the applicable statutory law.").

\* \* \* shall be discharged from all liens thereon against the defendant \* \* \* Except such liens as have been created by mortgage or mortgages, Prior to any general liens.' *The first lien being a lien 'created by mortgage,' and being Prior to a general lien, is within the exception, and is not discharged by the sale and does not share in the distribution of the proceeds.* The proceeds of sale are then applied, first to costs, second to taxes, third to (b) the first general lien, and fourth to (c) the second general lien and succeeding liens in the order of their entry and priority. The land is purchased Subject to the mortgage lien, and it is discharged from all liens subsequent to it, whether the proceeds are sufficient to reach and satisfy all of them or not.[47]

This is the Section cited an interpreted by both *Cedar Inn*[48] and *Eastern Savings*.[49] While the result here is unfortunate for REO Trust, it is one that is dictated by precedent.

## IV. Conclusion

Therefore, despite the unique factual set of circumstances presented and the curiosity of the actions of Short Sale with respect to the Property, in applying the legal principles set forth above, the Motion to Set Aside the Sheriff's sale is DENIED and the Motion to Enforce the Proceeds is GRANTED.

IT IS SO ORDERED.

**The Honorable Danielle J. Brennan**

cc:    File&Serve

---

[47]    Woolley, § 1140 (emphasis added).
[48]    *Cedar Inn*, 269 A.2d at 785.
[49]    *Eastern Savings*, 55 A.3d at 350.

15