**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

NATHAN A. COOK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

December 8, 2025

Scott G. Wilcox
Giordano & Gagne, LLC
5315 Limestone Road
Wilmington, DE 19808

Kevin R. Shannon
Daniel M. Rusk, IV
Heather S. Townsend
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

William J. Rhodunda, Jr.
Nicholas G. Kondraschow
Brandywine Plaza West
1521 Concord Pike, Suite 205
Wilmington, DE 19803

RE:  *NVR, Inc. v. Spring Oaks Development Purchaser, LLC, et al.*,
C.A. No. 2025-0852-NAC

Dear Counsel:

This letter decision resolves Defendants' motions to dismiss as they relate to

Plaintiff NVR, Inc.'s ("NVR") claims against Defendant Spring Oaks Development

Purchaser, LLC ("Development Purchaser") and Defendant U.S. Home, LLC ("U.S.

Home" and, together with Development Purchaser, "Defendants").[1]  For the reasons

stated below, NVR's claims must be dismissed.

---

[1] *NVR, Inc. v. Spring Oaks Development Purchaser, LLC, et al.*, C.A. No. 2025-0852-NAC,
Dkt. 9, Defendant U.S. Home, LLC's Motion to Dismiss Amended Complaint ("U.S. Home
Motion"); Dkt. 15, Defendant Spring Oaks Development Purchaser, LLC's Motion to Dismiss
NVR, Inc.'s Amended Complaint ("Development Purchaser Motion," and, together with U.S.
Home Motion, "Motions").

## I. FACTUAL BACKGROUND

I have drawn the relevant facts from the Amended Complaint ("Amended Complaint") and the documents incorporated by reference or integral to it.[2]

### A. The Parties

Plaintiff NVR, Inc. ("NVR") is a Virginia corporation licensed to do business in Delaware as a real estate developer. Defendant Spring Oaks Development Purchaser, LLC ("Development Purchaser") is a Delaware limited liability company. Defendant U.S. Home, LLC ("U.S. Home") is a Delaware limited liability company and a direct competitor to NVR in the real estate development industry.

### B. The Property

The property at issue ("Property") is the Spring Oaks development in Middletown, Delaware. The Property consists of 246 lots zoned for residential use. Three entities originally owned the Property: Spring Oaks Development, LLC; Hoover & Hoover, LLC; and Spring Oaks Lots 47-85, LLC (collectively, "Original Owners").

### C. The LPA

On March 27, 2018, NVR and the Original Owners entered into a Lot Purchase Agreement ("LPA").[3] Pursuant to the LPA, NVR agreed to purchase 158 of the 246 lots. The LPA provided that NVR's purchase would take place in a phased sequence

---

[2] *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004). Citations in the form of "AC ¶ __" refer to Plaintiff NVR, Inc.'s Amended Complaint. Dkt. 2.

[3] AC ¶ 9.

and was contingent on the completion of site work and the availability of permits and certificates of occupancy. Pursuant to the LPA, NVR provided an upfront investment in the form of a $1,050,000 deposit to secure these rights and recorded a mortgage against the property ("NVR Mortgage").[4] In particular, the LPA provides that "the Deposit, or any portion thereof, shall be used by Seller solely for the development of the Property and for no other purpose. . . . The return of the Deposit to Purchaser as provided in this Agreement shall be secured by a mortgage . . . on the Property in form as provided in Exhibit 'C-1'" to the LPA.[5]

The NVR Mortgage was recorded with the New Castle County Recorder of Deeds.[6] That recorded document referenced the LPA, but the LPA itself was not recorded. This was by agreement. Subsection 12(i) of the LPA provided that "[n]either this Agreement nor any memorandum thereof shall be recorded in the Recorder's Office by either party."[7]

NVR subsequently began acquiring the lots in phases as they became ready for delivery. Over the years, NVR purchased and developed 130 of the 158 lots for residential use. NVR then sold these homes to third-party buyers. By October 2020,

---

[4] *Id.* ¶ 10.

[5] Dkt. 27, Defendant U.S. Home, LLC's Opening Brief in Support of its Motion to Dismiss Amended Complaint ("U.S. Home OB"), Ex. 1, § 3(i) and Ex. C-1 thereto.

[6] *Id.*, Ex. 2 ("Mortgagor pursuant to [the LPA] is indebted to Mortgagee in the principal amount of . . . $1,050,000" and "Mortgagor, in consideration of the indebtedness and as security for the payment of the same, does hereby mortgage, grant and convey to the Mortgagee, its successors and assigns: SEE ATTACHED EXHIBIT 'A'" listing the 158 lots that were the subject of the LPA).

[7] *Id.*, Ex. 1.

only 24 lots remained undelivered ("Remaining Lots"). Spring Oaks Development, LLC, which was controlled by Zachary Pearce ("Pearce"), owned the Remaining Lots.[8] The lots remained undelivered due to development and permitting delays.

### D. The Foreclosure

On October 13, 2020, Spring Oaks Development executed and recorded a second mortgage on the Remaining Lots ("Spring Oaks Mortgage").[9] Nearly two years later, the Remaining Lots still had not been conveyed to NVR. On May 12, 2022, Spring Oaks Development defaulted on the Spring Oaks Mortgage, and the mortgagee initiated foreclosure proceedings.[10] NVR notified the mortgagee in writing that any foreclosure or sale would remain subject to NVR's purchase rights under the LPA.[11] NVR also provided a copy of the LPA to the Spring Oaks Mortgage mortgagee. Public records show that, on May 23, 2022, NVR recorded a Satisfaction of Mortgage, and requested the Register of Deeds to "enter satisfaction of" the NVR Mortgage.[12]

On August 9, 2022, the Remaining Lots were sold at a sheriff's sale to Defendant Spring Oaks Development Purchaser, LLC ("Development Purchaser").[13]

---

[8] AC ¶ 12.

[9] U.S. Home OB, Ex. 3.

[10] AC ¶ 13.

[11] *Id.* ¶ 14.

[12] U.S. Home OB, Ex. 4

[13] AC ¶ 15.

NVR alleges Pearce formed Development Purchaser as a new entity the day prior to the sheriff's sale to receive title to the foreclosed lots.

### E.      Post-Foreclosure Events

In the days following the sheriff's sale, NVR contacted Pearce seeking to continue the parties' performance under the LPA.  NVR alleges that Pearce "responded affirmatively and suggested he wanted to 'rekindle relationships' and move forward."[14]  Yet, Pearce requested higher lot prices from NVR than those set forth in the LPA.  Pearce claimed this increase was due to higher site work costs.  On April 3, 2023, NVR conveyed that it was willing to discuss pricing adjustments, "but only after Development Purchaser fulfilled its obligations to complete the site work and obtain permits, as required by the LPA."[15]

The pleadings do not allege discussions after this; it seems communications at this point went dark.  As one might suspect, Pearce did not perform under the LPA.  Instead, Pearce negotiated a sale of twelve of the Remaining Lots to U.S. Home, NVR's direct competitor.  U.S. Home subsequently recorded the deeds to these twelve lots.  NVR alleges it did not discover the breach until July 12, 2025, when it observed U.S. Home's signage and marketing materials advertising property at Spring Oaks.[16]

On July 17, NVR sent a formal notice of breach to Development Purchaser. NVR initiated this action on July 22, naming Development Purchaser and Lennar

---

[14] *Id.* ¶ 17.

[15] *Id.* ¶ 19.

[16] *Id.* ¶ 21.

Corporation ("Lennar") as defendants. Two days later, on July 24, NVR filed its Amended Complaint, swapping out Lennar for U.S. Home. NVR asserts four counts: (i) Quiet Title / Declaratory Judgment, (ii) Specific Performance, (iii) Breach of Contract (Damages), and (iv) Tortious Interference with Contract. NVR seeks a declaration that NVR holds equitable title to the Remaining Lots and U.S. Home's recorded deeds are void; an order of specific performance of the LPA by Development Purchaser; an injunction preventing U.S. Home from marketing or building on the Property; and an award of compensatory "and punitive" damages.[17]

Also on July 24, NVR also filed a Notice of Pendency of Action with the Recorder of Deeds, which it then amended the next day ("Notice of *Lis Pendens*"). On August 8, NVR moved to expedite this proceeding. On August 26, U.S. Home filed a Motion to Cancel *Lis Pendens* pursuant to 25 *Del. C.* § 1606 and 25 *Del. C.* § 1608 ("Cancellation Motion").[18] U.S. Home simultaneously filed a motion to expedite its Cancellation Motion. Following further submissions, I denied NVR's expedition motion and granted U.S. Homes' expedition motion on September 3. I directed

---

[17] "Absent a statutory grant of authorization, the Delaware Court of Chancery does not have jurisdiction to assess punitive damages." *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 886 (Del. Ch. May 4, 2022) (citing *Beals v. Wash. Int'l, Inc.*, 386 A.2d 1156, 1159 (Del. Ch. 1978)).

[18] *See DiSabatino v. Salicete*, 695 A.2d 1118, 1120 (Del. 1997) (explaining the General Assembly enacted 25 *Del. C.* ch. 16 to "codify in clear terms the protections to be afforded to real property owners against unscrupulous plaintiffs, who might misuse the *lis pendens* doctrine and cause irreparable harm to legitimate titleholders").

counsel to contact chambers to schedule a prompt hearing on the Cancellation Motion.

NVR cancelled its Notice of *Lis Pendens* voluntarily the next day. U.S. Home then requested a prompt hearing on its motion to dismiss given NVR's action to moot—or some might say avoid—a hearing on U.S. Home's Cancellation Motion. Despite having asked me to expedite this action in its reply papers the week prior, NVR now opposed accelerated consideration of U.S. Home's motion to dismiss. I held a scheduling conference on September 17 and granted U.S. Home's request for a prompt dismissal hearing. I heard argument on the Motions on October 21.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Standard

The standard for deciding a Motion to Dismiss under Court of Chancery Rule 12(b)(6) is well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[19]

### B. Quiet Title

NVR contends that Development Purchaser's conveyance to U.S. Home created an unlawful cloud on NVR's equitable title in the Property. "In Delaware, a plaintiff

---

[19] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citation omitted).

seeking to quiet title property must show that he has superior title over the defendant regarding the property at issue."[20]

## C.      Specific Performance

"Specific performance for the transfer of real property is an extraordinary remedy" and is not awarded lightly by courts.[21]  A party must prove entitlement to specific performance by clear and convincing evidence and that "he or she has no adequate legal remedy."[22]  A party seeking specific performance must establish that "(1) a valid contract exists, (2) he is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance."[23]

## D.      Tortious Interference

NVR alleges that both Development Purchaser and U.S. Home have tortiously interfered with the LPA.  "As traditionally framed, a claim for tortious interference with contract requires '(1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury.'"[24]

---

[20] *Toelle v. Greenpoint Mortgage Funding, Inc.*, 2015 WL 5158276, at *6 n.71 (Del. Super. Ct. Apr. 20, 2015) (citing *Marvel v. Barley Mill Rd. Homes*, 104 A.2d 903, 911 (Del. Ch. 1954)).

[21] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) (citations omitted).

[22] *Id.* (citing *West Willow–Bay Court, LLC v. Robino–Bay Court Plaza, LLC*, 2007 WL 3317551, at *12 (Del. Ch. Nov. 2, 2007)).

[23] *Id.* (citing *Morabito v. Harris*, 2002 WL 550117, at *2 (Del. Ch. Mar. 26, 2002)).

[24] *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1 (Del. Ch. 2009) (quoting *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987)).

## III.  ANALYSIS

NVR posits several theories to support their claim of superior title over the Remaining Lots.  First, NVR contends that the LPA granted them equitable ownership over the Remaining Lots, thereby shielding NVR against future claims to the Property.  This claim fails to overcome a plain reading of 10 *Del. C.* § 5066, which provides:

> The person to whom any lands and tenements shall be sold, or delivered, under § 5065 of this title, and such person's heirs and assigns, shall hold the same, with their appurtenances, for such estate, or estates, as they were sold, or delivered for, *discharged from all equity or redemption, and all other incumbrances made and suffered by the mortgagor*, the mortgagor's heirs, or assigns; and such sale shall be available in law.

10 *Del. C.* § 5066 (emphasis added).  NVR argues that their interest remains binding on the Property because the statute does not extinguish equitable ownership upon foreclosure.  Case law says otherwise.

In *Matter of Spencer*, the United States District Court for the District of Delaware, applying Delaware law, held that "after a foreclosure judgment and execution *both* the equity of redemption and equitable ownership are extinguished."[25]

---

[25] 115 B.R. 471, 480 (D. Del. 1990) (emphasis added).  The *Spencer* court goes so far as to note that "in Delaware the rights granted by equitable ownership and the equity of redemption are extinguished by a foreclosure sale, thereby indicating the unity of the two concepts." *Id.* The phrase "equity *or* redemption" in 10 *Del. C.* § 5066 may strike some readers as arguably unusual given the common usage of the phrase "equity of redemption."  The parties have focused on the disjunctive as indicative of meaning.  I note that the original version of this law seems to have been enacted in the 1700's as one of Delaware's very earliest laws.  Indeed, it appears to have been the forty-sixth law enacted by our General Assembly and immediately follows a law "to prevent swine from running at large in the town of Dover." 1 Laws of the State of Delaware, ch. XLV (1777).  Notably, this initial 1700's version of the statute provides

This makes sense. "[I]n Delaware, it is 'the equitable interest and not the bare legal title in the property which [has] value to the purchaser.'"[26] Just as a mortgagor's right to equity of redemption is extinguished by a sheriff's sale, prior equitable ownership is also eliminated and instead vested in the purchaser at the sale.[27] Thus, *Spencer* reinforces the principle that a foreclosure sale creates a *new* equitable owner in property.[28]

Here, to the extent that NVR had an equitable interest in the Property by virtue of the LPA, those rights ceased upon the sheriff's sale. Equitable ownership in this context may be thought of as a zero-sum game. Upon the sale, a new equitable owner—Development Purchaser—was created, while any claim to equitable ownership that NVR might have had ceased.[29]

---

that all lands sold via sheriff's sale shall be sold "discharged and freed from all equity and benefit of redemption, and all other incumbrances made and suffered by the mortgag[o]rs[.]" 1 Laws of the State of Delaware, ch. XLVI, § 5 (1777). The law, as amended, retains the reference to "all equity and benefit of redemption" until the mid-nineteenth century, when it changes to "all equity of redemption[.]" *Del. C. 1852*, § 59. This formulation, in turn, remains in place until 1935, when the disjunctive makes its first appearance in the printed version of the law as "all equity or redemption[.]" *Del. C. 1935*, § 4863. It is not clear that this change results from any statutory enactment at the time or whether it was perhaps instead a typographical error, made in the middle of the Great Depression. In any event, in 1974, the General Assembly codified the Delaware Code Annotated. 1 *Del. C.* § 101. In doing so, there is no question that the General Assembly adopted and enacted the version of the statute containing the disjunctive. 10 *Del. C.* § 5066; 1 *Del. C.* § 103 (providing that all prior codes are repealed unless expressly continued by specific provision of this Code).

[26] *Spencer*, 115 B.R. at 483 (quoting *Hogg v. Walker*, 1989 WL 128572 (Del. Ch. Oct. 26, 1989)).

[27] *Id.* at 480.

[28] *See also id.* at 483 ("In Delaware, equitable ownership from a sheriff's sale is so respected that it is a constitutionally protected property right.") (citing *Gelof v. First Nat'l Bank of Frankford*, 373 A.2d 206, 208 (Del. 1977)).

[29] *See generally id.* at 478–79.

NVR contends that the only interests extinguished in a sheriff's sale are subordinate nonmortgage liens.[30] For support, NVR relies upon on the Delaware Supreme Court's decision in *Eastern Savings Bank, FSB v. CACH, LLC*.[31] There, our high court held that, although nonmortgage liens were indeed extinguished by foreclosure sales, certain other unique encumbrances—namely, easements and restrictive covenants—were not.[32] NVR construes this holding to mean that "equitable property rights . . . are not extinguished by foreclosure or sheriff's sale."[33] But this interpretation expands the holding in *Eastern Savings Bank* and ignores key aspects of the decision's reasoning. The *Eastern Savings Bank* decision does not go so far as to say that *all* equitable interests survive a sheriff's sale.[34] Instead, the Court held that, subject to certain caveats, real estate sold by a foreclosure process

---

[30] Dkt. 35, Plaintiff NVR Inc.'s Answering Brief in Opposition to Defendant U.S. Home, LLC's Motion to Dismiss ("AB to U.S. Home Motion"), at 10.

[31] 55 A.3d 344, 348 (Del. Ch. 2012).

[32] *Id.*

[33] AB to U.S. Home Motion, at 9.

[34] In *Eastern Savings Bank*, the appellant relied on two decisions that it suggested showed a narrowing of otherwise longstanding case law concerning the expansive effect of a foreclosure sale. The Delaware Supreme Court, however, described the text from both those decisions on which the appellant relied as "erroneous dicta" and took pains to cabin the decisions to their specific circumstances, one involving a utility easement and the other a restrictive covenant. *See* 55 A.3d at 348–49 (citing *Atkinson v. B.E.T., Inc.*, 1984 WL 159375 (Del. Ch. Dec. 4, 1984); *PNC Bank, Delaware v. Philben, Inc.*, 1997 WL 717786 (Del. Super. Oct. 1, 1997)). Far from suggesting a broad equitable carveout to 10 *Del. C.* § 5066, the analysis in *Eastern Savings Bank* suggests the exact opposite.

"must be free from all liens against the previous owner" consistent with "[l]ongstanding statutory and common law precedent[.]"[35]

Today's decision is consistent with the *Eastern Savings Bank* holding. As an initial matter, NVR had a recorded mortgage interest in the Property.[36] The mortgage interest, as explained above, arose out of and was expressly contemplated by the terms of the LPA. If anything, this confirms this matter falls squarely within the ambit of 10 *Del. C.* § 5066, which refers to the discharge of all "incumbrances made and suffered by the mortgagor[.]"[37]

As explained above, the recorded NVR Mortgage contained only one bare reference to the intentionally unrecorded LPA. And NVR recorded a satisfaction of the NVR Mortgage on May 23, 2022, three months before Development Purchaser

---

[35] *Id.* at 348–49; *see id.* at 347 ("The second statute cited by the parties, 10 *Del. C.* § 5066, also provides that land sold after foreclosure shall be discharged from all incumbrances incurred by the prior owner.").

[36] *See* U.S. Home OB, Ex. 2; *id.*, Ex. 1 ("The return of the Deposit to Purchaser as provided in this Agreement shall be secured by a mortgage . . . on the Property in the form as provided in Exhibit 'C-1'").

[37] NVR argues that even if its "interest were treated as a lien, which it should not," the sheriff's sale would not result in dismissal because "sheriff's sales discharge only subordinate liens, not senior property interests." Dkt. 34, Plaintiff NVR, Inc.'s Answering Brief in Opposition to Defendant Spring Oaks Development Purchaser, LLC's Motion to Dismiss ("AB to Development Purchaser's Motion"), at 9 (citing *E. Sav. Bank*, 55 A.3d at 349). In making this argument, NVR seems to be pointing to quoted text from *PNC Bank, Del. v. Philben, Inc.*, 1997 WL 717786 (Del. Super. Oct. 1, 1997), that the Delaware Supreme Court describes as "erroneous dicta" in *Eastern Savings Bank*. 55 A.3d at 349 (discussing *Philben*, 1997 WL 717786, at *4); *see* AB to Development Purchaser's Motion, at 10 (also citing the reversed trial-court decision in *Eastern Savings Bank* for the same rejected proposition from *Philben*). In any event, NVR's argument runs counter to the analysis in *Eastern Savings Bank*, which explains that "[l]ongstanding statutory and common law precedent requires that land sold at a sheriff's sale be transferred free of all nonmortgage liens[,]" regardless of seniority status. 55 A.3d at 349.

purchased the Remaining Lots at the sheriff's sale.[38]  Thus, any recorded interest that NVR may have had in the Property was voluntarily erased before the foreclosure sale.  And, to the extent NVR retained equitable ownership rights in the Property, that interest was extinguished when Development Purchaser purchased the Remaining Lots at the sheriff's sale.  Simultaneously, NVR lost any ability it might otherwise have had to obtain specific performance of the LPA insofar as it concerned delivery of the lots sold at the sheriff's sale.

Next, NVR argues that U.S. Home was under actual or inquiry notice of NVR's rights and, therefore, is not a bona fide purchaser.  *Bathla v. 913 Market, LLC*, however, is instructive here.[39]  In *Bathla*, the Delaware Supreme Court was asked to resolve a dispute over a failed commercial real estate transaction between seller 913 Market, LLC and buyer Kamal Bathla.  913 Market had previously entered into a contract for the property with a different buyer, but the deal fell through.[40]  The purchase agreement between 913 Market and Bathla included the representation that the property would be sold "free of all liens and encumbrances."[41]  Bathla's title insurer would not issue a title commitment without exceptions for the previous purchaser.[42]  So, Bathla argued the purchase agreement's condition precedent was

---

[38] U.S. Home OB, Ex. 4.

[39] 200 A.3d 754 (Del. 2018).

[40] *Id.* at 757.

[41] *Id.* at 758.

[42] *Id.*

not satisfied. Our high court disagreed, explaining that "under Delaware's 'pure race statute,' any potential claim that [the original purchaser] might have on the property would have been extinguished had Bathla closed and recorded his deed."[43] The Court continued: "It is irrelevant that Bathla had notice of the prior [third-party sale] contract."[44]

Applying this reasoning, NVR's unrecorded equitable-ownership interest was, in any event, extinguished at the latest when U.S. Home recorded its deeds to the Remaining Lots. Pursuant to Delaware's pure race regime, the result is the same *even if* U.S. Home had knowledge of NVR's earlier claims.[45] Any other result would vitiate the purpose of the pure race statute.[46] The Court need not reach the issue of whether U.S. Home was a bona fide purchaser for purposes of this ruling. NVR's requested remedies of Quiet Title and Specific Performance are, for the reasons discussed, unavailable against U.S. Home.

Next, I conclude NVR's breach of contract claim must also be dismissed. Neither Development Purchaser nor U.S. Home was a contractual counterparty to

---

[43] *Id.* at 761 (citations omitted).

[44] *Id.* at 761–62; *see generally id.* at 762 n.41.

[45] *Id.* at 761–62; *see also Guarantee Bank v. Magness Const. Co.*, 462 A.2d 405, 407–08 (Del. 1983) (same).

[46] In supplemental briefing, NVR cited to *Cieniewicz v. Sliwka*, 133 A. 695 (Del. Ch. 1926), for the proposition that a subsequent purchaser must demonstrate that they are bona fide purchasers for value. Dkt. 45. *Cieniewicz* is inapplicable, as it predates the adoption of Delaware's pure race statute. 25 *Del. C.* § 153; *see N & W Dev. Co. v. Carey*, 1983 WL 17997, at *3 (Del. Ch. Jan. 27, 1983), *aff'd*, 474 A.2d 138 (Del. 1983) ("This statute in its present form, differs from the pre-1968 version which was not a pure race statute.").

the LPA; any viable claim that NVR has or had for breach of contract would be against the Original Owners. And NVR failed to allege or meaningfully argue that Development Purchaser somehow actually assumed the LPA. At best, NVR points, in passing, to its allegation that NVR contacted Development Purchaser's owner, Pearce, after the sheriff's sale and that Pearce suggested he wanted to "rekindle relationships" with NVR.[47] But NVR goes on to allege that Pearce sought new terms. And, quite notably, NVR does not allege that it ever reached any agreement with Development Purchaser. Nor does NVR allege it did anything in the years after its meager correspondence died out, until rushing to court in July 2025 upon seeing U.S. Home advertising homes for sale. Put simply, NVR fails to adequately allege that Development Purchaser assumed the LPA following the sheriff's sale. Indeed, neither the word "assume" nor any variant thereof appears in NVR's amended complaint.

Instead, NVR's arguments basically boil down to these: First, Pearce was also involved with the Original Owners and, indeed, signed the LPA. Second, according to NVR, it defies common sense to believe U.S. Homes did not have notice of NVR's unrecorded equitable-ownership interest, even if the precise source of that interest was unknown to U.S. Homes.

---

[47] AB to U.S. Home Motion, at 11; AB to Development Purchaser Motion, at 8.

As to the first argument, it is by now a truism that Delaware law respects corporate separateness.[48] NVR would have me ignore corporate separateness in pursuit of its breach of contract claim against a non-party to a contract. NVR, however, fails to meaningfully engage with this fundamental problem with its claim. As to the second argument, I have already explained why, in a pure race state like ours, NVR's arguments about notice in favor of its unrecorded equitable interest fall flat in the face of U.S. Home's recorded deeds.

In a similar vein, NVR's claims for tortious interference against Development Purchaser and U.S. Homes fail. The critical element of a tortious interference claim requires an intentional act by the defendant that is a significant factor in causing the breach of the contract.[49] Pearce's knowledge of the LPA may be imputed to Development Purchaser.[50] But knowledge alone is insufficient without a requisite act causing breach of contract. Here, Development Purchaser has taken no such action. Any claim to equitable ownership in the Property that NVR might have had was cut off by the foreclosure sale. The subsequent sale by one non-contractual party to another non-contractual party, following a sheriff's sale, had no impact on any of NVR's alleged interests in the Remaining Lots.

---

[48] Delaware law recognizes and respects the concept of corporate separateness. *See In re Aearo Techs. LLC*, 2025 WL 2312921, at *10 n.77 (Del. Aug. 12, 2025) (collecting cases).

[49] *Bhole, Inc. v. Shore Investments, Inc.*, 67 A.3d 444, 453 (Del. 2013).

[50] *NAMA Holdings, LLC v. Related WMC LLC*, 2014 WL 6436647, at *27 (Del. Ch. Nov. 17, 2014).

For similar reasons, NVR's claims against U.S. Home also fail. NVR's beef lies with the foreclosure sale because that is what terminated its equitable ownership interest. U.S. Home plainly did not, by entering into a contract with Development Purchaser after the sheriff's sale, somehow tortiously interfere with the terms of an LPA that NVR could no longer enforce. Any other conclusion here would run contrary to policy, including that discussed in *Eastern Savings Bank* and *Bathla*.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions are granted. The Amended Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Nathan A. Cook*

Vice Chancellor